**GAUMONT, Appellant,**

v.

**EMERY AIR FREIGHT CORP.; Security Experts, Inc., Appellee.**

[Cite as *Gaumont v. Emery Air Freight Corp.* (1990), 62 Ohio App.3d 220.]

Court of Appeals of Ohio,
Montgomery County.

No. 11792.

Decided Jan. 26, 1990.

*John D. Pearson* and *Howard E. Swinehart,* for appellant.
*Robert J. Surdyk,* for appellee.

FAIN, Judge.

Plaintiff-appellant, Jean L. Gaumont, appeals from a summary judgment entered in favor of defendant-appellee Security Experts, Inc. ("Security"), upon Gaumont's second amended complaint. Gaumont contends that the trial court erred by concluding that the communication comprising his alleged defamation by an employee of Security was entitled to a qualified privilege. We conclude that the evidence before the trial court, when viewed in a light most favorable to Gaumont, established that the communication was within the scope of the qualified privilege. Because there was no evidence of express malice, the trial court properly granted Security's motion for summary judgment. Accordingly, the judgment of the trial court will be affirmed.

I

This litigation has its origin in an action brought by Gaumont against several defendants, including Security, as a result of the termination of his employment by defendant Emery Air Freight Corporation. Gaumont's complaint alleged the wrongful termination of his employment, as well as defamation, in that he had been accused of theft from his employer.

The case was previously before this court. *Gaumont v. Emery Air Freight Corp.* (1989), 61 Ohio App.3d 277, 572 N.E.2d 747. In our previous decision, we affirmed all aspects of the judgment in favor of the defendants, except that we reversed the summary judgment in favor of Security, and remanded that cause for further proceedings, holding that the trial court erred by refusing to permit Gaumont to amend his complaint to state a claim based upon communications allegedly made by one Frank W. Smith, an employee of Security, which had come to light during discovery.

Upon remand, a second amended complaint was filed that, among other things, set forth a defamation claim against Security based upon communications by certain unnamed employees.

Security filed a motion for summary judgment, and Gaumont filed a memorandum opposing the motion. From the motion and memorandum, it became clear that Gaumont was basing his defamation claim against Security upon a communication between its employee, Frank Smith, and Miami County Sheriff's Deputy James A. Griffieth.

Gaumont submitted the affidavit of Deputy Griffieth in which Griffieth averred that he had investigated a burglary complaint made by Gaumont regarding certain articles stolen from Gaumont's Miami County "property," about three or four months before an individual, evidently Frank Smith, came to Griffieth's office to talk to him. This conversation is related in Griffieth's affidavit as follows:

"3. In July or August of 1986, an individual [Smith] came to the Miami County Sheriff's Department office in Troy, Ohio requesting to speak with me. This individual showed me his identification card and stated that he worked for Security Experts, Inc., who in turn was employed by Emery Air Freight Corporation and that Security Experts, Inc., handled all security and internal investigations for Emery Air Freight Corporation, and was, with regard to the meeting with myself, conducting an internal investigation for Emery Air Freight Corporation of a former employee of Emery Air Freight Corporation, Jean L. Gaumont, and that his inquiry was being undertaken on behalf of Emery Air Freight Corporation.

"4. This investigator requested a copy of my report from the said April, 1986 incident, a list of the articles of property taken in the theft. He further asked me what I had observed on the Gaumont property in connection with the April, 1986 investigation referred to in Paragraph No. 2.

"5. The investigator asked me if, while at the Gaumont property in April, I had seen any articles marked as belonging to Emery Air Freight Corporation in the possession of Jean L. Gaumont. I responded that I had not. Without any overture from me, the Investigator then showed me a loose-leaf notebook binder of the approximate dimensions of 12″ × 10″ which appeared to be 1/2 to 3/4 full of papers. The investigator said the contents of the said notebook were 'all on Jean L. Gaumont', and that Emery, through Security Experts, Inc., had been investigating Jean L. Gaumont for some time, but that Jean L. Gaumont was 'very clever' in concealing various transactions that he, Jean L. Gaumont, had been involved in while an employee at Emery. The investigator mentioned some examples to me of Mr. Gaumont's method of operation by which he would acquire property for himself from Emery materials suppliers. For example, the investigator said that Mr. Gaumont would order two boxes of tools from an Emery tool supplier, place one box of tools in Emery's inventory, the other box of tools Mr. Gaumont would keep for his own

personal use. Emery would in turn be billed and pay for both boxes of tools. He said that Emery had not known that Mr. Gaumont had kept one for his personal use without permission, and Emery would not have paid if it had known. He gave another example of a course of action taken by Mr. Gaumont in that Mr. Gaumont would sign an Emery purchase order, then have one of Mr. Gaumont's subordinates pick up the 'purchased' property, bring the article or articles back to Mr. Gaumont's office at his employment location at Emery where Mr. Gaumont would keep the article of property for himself without knowledge or permission of Emery, who had unknowingly paid for such article or articles.

"6. These statements from the investigator clearly conveyed to me that Jean L. Gaumont was using dishonest or illegal methods to acquire various articles of property for himself without his paying for such articles with his own funds and that Emery unknowingly had paid for such articles and that such actions amounted to theft. I believed also from such statements that such type of conduct and methods used by Mr. Gaumont were a regular and continuing course of conduct by Mr. Gaumont while he was employed by Emery.

"7. I never investigated any of the activities of Mr. Gaumont mentioned by the investigator before or after the latter's meeting with me nor was I ever asked or directed by anyone to do so, and I further never requested any information, background, or any other matters pertaining to Mr. Gaumont from the investigator or anyone else."

The trial court held that the communication described above was within the scope of the qualified privilege. Because there was no evidence of express malice, the trial court granted summary judgment in Security's favor. Gaumont appeals from that judgment.

## II

Gaumont's sole assignment of error is as follows:

"The trial court erred, on August 11, 1989, in sustaining the motion for summary judgment of appellee, Security Experts, Inc., as there are issues of material facts to be decided by the trier of facts and appellee Security Experts, Inc., is not entitled to judgment as a matter of law."

Gaumont contends that the above-described communication was not within the scope of the qualified privilege, because the Miami County's Sheriff's Department was not the proper place to report a suspected theft occurring in Montgomery County. Gaumont argues that Smith was an experienced investigator who would have realized that the proper law enforcement officers to

whom to report the suspected theft were in Montgomery County, where the theft occurred, and not in Miami County, where Gaumont evidently resided.

Frank Smith gave a deposition, in which he testified that he had been investigating allegations that Gaumont, an employee in Emery's maintenance department, had stolen some tools. During the course of his investigation, Smith noticed a report in a newspaper of an alleged theft of some tools from Gaumont's residence, in Miami County. After noticing that newspaper report, Smith decided to contact the Miami County Sheriff's Department, to see what kind of tools had allegedly been stolen from Gaumont's home. During the course of his conversation with Griffieth, he asked whether Griffieth had seen anything with the Emery Air Freight name on it.

Smith testified that he simply asked to see a copy of the report on the alleged theft from Gaumont's residence, but that Griffieth then asked him why he wanted to see it. According to Smith, his sharing with Griffieth of the allegations against Gaumont was simply in response to Griffieth's question. However, this is contradicted by Griffieth's affidavit, in which Griffieth averred that Smith made the allegations against Gaumont without any "overtures" from Griffieth. Because this is an appeal from a summary judgment, all conflicts in the evidence must be resolved in Gaumont's favor. Accordingly, we will assume that Griffieth's affidavit is correct.

"A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 244, 72 O.O.2d 134, 138, 331 N.E.2d 713, 718. Although the issue is close, we conclude that Security's employee, Smith, was within the scope of the qualified privilege when he told Griffieth of his suspicions concerning Gaumont.

Although the theft that Smith was investigating had occurred in Montgomery County, it was natural for Smith to inquire concerning the alleged theft of tools from Gaumont's Miami County residence, and the Miami County Sheriff's Office had investigated that theft. Therefore, it was appropriate for Smith, as Security's employee, to contact the Miami County Sheriff's Department.

It was well within the scope of Smith's investigation to determine whether any of the items reported by Gaumont as having been stolen from his home, or any items seen in Gaumont's home during the investigation of that alleged theft, were Emery Air Freight property. Accordingly, it was important to impress upon Deputy Griffieth that the purpose for the inquiry was the serious purpose of ascertaining whether Gaumont had stolen property from Emery Air Freight. By impressing upon Griffieth the serious purpose of his

inquiry, Smith was more likely to elicit Griffieth's full cooperation and careful reflection concerning his memory of events.

By the same token, Griffieth had a purpose in common with Smith and his employer, Security, since Griffieth, as a law enforcement officer, would have an official interest in any criminal activity of which he might have personal knowledge. We would be loathe to take so narrow a view of the duty of a law enforcement officer that we would find him to have no duty, not even a moral duty, to assist in the investigation of criminal activity concerning which he has some personal knowledge, even though that criminal activity may have taken place outside his jurisdiction.

Accordingly, we hold that the communication between Smith and Deputy Griffieth was subject to the qualified privilege. Gaumont does not challenge the trial court's conclusion that there was "no scintilla" of evidence to show that Smith was motivated by actual or express malice in making that communication. Therefore, the trial court properly granted Security's motion for summary judgment.

Gaumont's sole assignment of error is overruled.

### III

Gaumont's sole assignment of error having been overruled, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and WILSON, J., concur.