BLACK, Appellant,

v.

CLEVELAND POLICE DEPARTMENT et al., Appellees.*

[Cite as *Black v. Cleveland Police Dept.* (1994), 96 Ohio App.3d 84.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65715.

Decided July 5, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1994), 71 Ohio St.3d 1421, 642 N.E.2d 386.

*Guy Templeton Black, pro se.*

*Sharon Sobol Jordan,* Law Director, and *Joseph Jerse,* Assistant Law Director, for appellees.

---

DONALD C. NUGENT, Judge.

*Pro se* plaintiff-appellant, Guy Templeton Black, timely appeals the decision of the Cuyahoga County Court of Common Pleas which granted summary judgment to the defendants-appellees, Cleveland Police Department,[1] Sergeant Roy W. Warner, Officer Vukmire, Officer Oliver, Captain Timothy McAndrew, and the city of Cleveland (hereinafter collectively referred to as "appellees").

In his complaint, appellant alleged that numerous statements contained in internal police communications were defamatory. In a "field report" dated July 2, 1992 and attached to appellant's complaint, Sgt. Warner wrote the following:

"Victim attempted to make report on 6/25, car 204 on scene found victim to be acting in a manner, which they believed to make him unreliable and no rept was made. Alleged victim called district 6/26 and complained of no rept. Car 204 returned and req. a supervisor. Sgt. Warner responded and was informed by members of 204, I talked with alleged victim and believe him to be mentally unstable, his facts are not believable re; this alleged incident. He stated described MV came around the corner at High rate of speed and up on the sidewalk, by him, then went around the block and ret, with 4/5 males (W) appalachians and 1 appeared to point unk obj at victim and 1 made threating remarks about getting you you nigger lover to the R.P. Sgr. Warner advised 2 * * * N/R at that time. On 7/2/92 R.P. again called re; no rept being made.

---

1. Appellees correctly pointed out that the Cleveland Police Department has no separate existence from the city of Cleveland and cannot sue or be sued.

R.P. has run for many offices and involved in many campaigns. I found that over 20 reports made at 753 Brayton since 12/87 by admission of R.P. no complaints have resulted in any prosecutions. Based on all facts received by me I have trouble in believing any incident took place and think Mr. Black is looking for media exposure. THIS REPORT MADE AS ALLEGED ONLY; NO MATERIAL EVIDENCE TO PROVE ANY OF THE ALLEGATIONS." (*Sic.*)

Additionally, in a report titled "Departmental Information," which was also attached to appellant's complaint, Sgt. Warner wrote the following to Cap. Timothy McAndrew:

"Sir:

"On Saturday [*sic*] June 26, 1992 at 2014 hrs I received a request from the officers on car 204 to meet with them at 753 Brayton ave. I responded and met with Officers Vukmire # 1955 and Oliver # 934. They explained to me that they had been at this location on 6/26/92 re; a complaint of racial threats etc. and went on to explain that the complainant, was acting irrational and confused when they had arrived and not making sense about his complaint. The officers had advised the male and left they did not feel that a report should be made because of the mental condition of the male.

"I went to the male and learned him to be GUY T. BLACK after a few minutes of conferring with the male I also believe the male to be a mental case, the things he saw saying did not make any sense, he mentioned things about the DEA drug unit of using his upstairs and drug sniffing dogs being trained, he also babbled on about several volunteer programs he ran out of his home and when asked to explain what they stood for he had no explanation for them, he has numerous signs on the house re; to being a place to register to vote etc. the male stated a car had come around the corner at 50 MPH and that four White males in the car had yelled things at him about being a nigger lover, he could not explain why they would do this to him, he stated that he wanted to report it to the FBI, I asked if anyone else had observed this act and he stated no. I had the officers take his info on the alleged threats, he also said he had a partial license plate number and would call back with the completed plate number. I met with the officer[s] and I agreed with them that the male was a mental case and decided not to make a report at this time, advised the officers to check the area as a spl/attn in case there was any trouble, I also have checked the area as a spl/attn since that time and have received no evidence of any more complaints. I ran the location in the report computer system and learned that between December of 1987 and September of 1991 there had been 20 incident reports made from this location.

"On Tuesday 6/[3]0/92 the male called the district very upset that no police report had been made, I attempted to talk to him and he hung up the phone.

"I believe this male (Guy T. Black) to be a mentally unstable person and any calls for service to his home should be answered by a district supervisor, to see if the call is justified." (*Sic.*)

In their joint answer, appellees admitted the authenticity of the copies of the Cleveland police records but otherwise denied that the statements contained therein were defamatory. Subsequently, appellees moved for summary judgment, relying on the facts as contained in the police records attached to appellant's complaint. Appellees argued that the city was entitled to summary judgment on the basis of the statutory immunity afforded under R.C. Chapter 2744. Additionally, the individual police officers argued they were entitled to summary judgment on the ground of qualified immunity from liability for defamation.

Appellant duly filed a response brief in which he argued that he has evidence which supports his claim that the Cleveland police acted maliciously in "storing and giving out and making up documents that are making plaintiff look like a commy crook, crazy, radicail, violent, etc. etc.—when reality plaintiff is a good, honest, caring, social political activist that has over 400 documents tape audio recordings, video recordings etc. to support plaintiff['s] claims and prove that the police officers as defendants lied, made up conspired with each other and others to make plaintiff look bad as a lier, crazy, fraudulant etc. person; because plaintiff is exposing corruption at the second district police dept. and other parts and parts of city, state, federal governments." (*Sic.*)

Additionally, appellant attached to his response brief numerous documents pertaining to his work as a social and political activist.

Based on the foregoing, the trial court granted summary judgment in favor of all defendants. Appellant timely appeals, raising the following assignments of error for our review:

"I. The lower court did not consider all of appellant['s] evidence although appellee[s] admitted authenticity of the Cleveland police copies of records.

"II. The lower court granted summary judgement on the grounds of qualified immunity of the appellees—but no affidavits were supplied to the court by appellees stating they didn't use *falsity* and *actual malice* towards appellant. [*Sic.*]

"III. The lower court errored by simple rubber stamping a summary judgement because appellant is pro-se. [*Sic.*]

"IV. The lower court favored the system over the individual right of the individual such as appellant."

In this appeal, appellant contests the trial court's ruling on the city's statutory immunity on the sole basis that the individual officers "exceeded their authority by beating appellant with lies—words which can destroy someone as well as a[n] illegal beating with clubs." However, because we conclude that the trial court correctly granted the individual officers summary judgment on the grounds that the allegedly defamatory statements were the subject of a qualified privilege, we need not consider whether the city is vicariously liable for the allegedly defamatory statements.

Additionally, we note that appellant fails to separately argue each assignment of error. See App.R. 16(A)(7). Instead, in a single "argument and law" section of his appellate brief, appellant argues that the defense of qualified immunity is available only where the defendants "don't falsely or maliciously harm" another. Appellant further argues that the evidentiary materials demonstrate that the individual defendants falsely and maliciously caused him harm. We shall, therefore, limit our discussion to appellant's argument and law section and disregard appellant's assignments of error as they are not supported by argument or citations to the record. App.R. 12.

■   In order to establish a claim for libel, the following must be demonstrated:

1.   the statement must be false;

2.   the statement must be defamatory towards the plaintiff;

3.   the statement must be in writing;

4.   the statement must be published;  and

5.   the defendant must be proven guilty of some degree of fault. *Putka v. First Catholic Slovak Union* (1991), 75 Ohio App.3d 741, 600 N.E.2d 797; see, also, *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243, 72 O.O.2d 134, 138, 331 N.E.2d 713, 718.

Appellees argued, in support of their motion for summary judgment, that they possessed a qualified privilege to make the allegedly defamatory statements. In *Hahn v. Kotten, supra*, the Ohio Supreme Court stated:

" 'Conditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, *and makes a showing of falsity and actual malice essential to the right of recovery.*

" 'A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. *The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.*' " (Emphasis *sic.*) *Id.* at 244, 72 O.O.2d at 138, 331 N.E. at 718.

The existence of a qualified privilege in a defamation action is a mixed question of law and fact. *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962; see, also, *Boyert v. Tylok Internatl., Inc.* (Mar. 3, 1994), Cuyahoga App. No. 64703, unreported, 1994 WL 66397. In appropriate cases, resolution of the existence of a qualified privilege may be made by way of summary judgment. *Boyert, supra.* Moreover, the existence of a qualified privilege has been recognized in cases involving allegedly defamatory statements made during the course of criminal or governmental investigations. See *Atkinson v. Stop–N–Go Foods, Inc.* (1992), 83 Ohio App.3d 132, 614 N.E.2d 784; *Gaumont v. Emery Air Freight Corp.* (1990), 62 Ohio App.3d 220, 575 N.E.2d 221; and *Barnes v. Mosack* (June 7, 1984), Cuyahoga App. No. 47575, unreported, 1984 WL 5033.

In the present case, we agree that the statements made in the internal police communications are protected by a qualified privilege. The statements were made between law enforcement officers and concern matters in which the officers have a common interest. See *Smith v. Klein* (1985), 23 Ohio App.3d 146, 23 OBR 387, 492 N.E.2d 852, paragraph two of the syllabus. Additionally, this court recognizes that the officers in question have both a legal and moral obligation to speak on matters involving the investigation of alleged criminal occurrences. See *Hahn v. Kotten, supra,* 43 Ohio St.2d at 244, 72 O.O.2d at 138, 331 N.E.2d at 718.

Appellant argues, however, that a qualified privilege does not exist where the defendants falsely and maliciously harm another. In *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus, the Ohio Supreme Court held:

"When a defendant possesses a qualified privilege regarding statements contained in a published communication, that privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice. In a qualified privilege case, 'actual malice' is defined as acting with

knowledge that the statements are false or acting with reckless disregard as to their truth or falsity."

Furthermore, it is appellant's burden to show that the defendants acted with actual malice. *Id.* at 119, 573 N.E.2d at 616. The fact that the alleged defamatory statements were made, standing alone, is insufficient to show that they were made with actual malice. *Barnes v. Mosack, supra,* at 5.

Appellant argues that it was error for the trial court to grant appellees' motion for summary judgment when said motion was unaccompanied by any evidentiary materials demonstrating that the statements were not made with malice. However, as previously stated, it is appellant's burden of demonstrating actual malice.

Additionally, it is well settled that a motion for summary judgment forces the nonmoving party to produce evidence on all issues for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. Appellant herein has failed to produce any evidence tending to show that appellees acted with actual malice. Instead, appellant's evidentiary materials were offered to prove the defamatory nature of the statements.

Therefore, this court concludes that in construing the facts as established in the pleadings, affidavits and other evidentiary materials made a part of the record, in a light most favorable to appellant, reasonable minds can reach only one conclusion and that is that no evidence existed from which a reasonable jury could find actual malice and that appellees were entitled to summary judgment as a matter of law.

Appellant's four assignments of error are, therefore, overruled.

*Judgment affirmed.*

NAHRA, C.J., and PATRICIA BLACKMON, J., concur.