NUNCPROTUNC DECISION[1]
[1] This Nunc Pro Tunc Decision was issued to correct a clerical error contained in the original decision released on September 29, 2006, and is effective as of that date.
{¶ 1} Plaintiff-appellant, James G. Jackson, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment for defendants-appellees, the City of Columbus and Thomas W. Rice, Sr.
 {¶ 2} Appellant is the Chief of the Columbus Division of Police. Appellee, Thomas W. Rice, Sr., is the former Safety Director for the city and in that capacity was appellant's direct supervisor. This case arises out of an investigation conducted at the express direction of the Mayor of Columbus into allegations of misconduct and mismanagement in the division of police. This investigation concluded with presentation of a "Mayoral Investigative Report" (the "mayoral report"), presenting the findings of the investigation addressing the underlying allegations and making recommendations for reforms or improvements in the management of the Columbus Division of Police.
 {¶ 3} After the mayoral report was presented in 1997, appellant began legal action claiming that he was defamed by numerous statements contained therein. Although appellant has, in this and companion cases, asserted that many aspects of the mayoral report contain defamatory statements published with actual malice by appellees in furtherance of a bitter personal and political feud between appellee Rice and appellant over control of the Columbus Division of Police, the only statements that remain directly pertinent to this appeal are the republished allegations of one Keith Lamar Jones who, at the time of the investigation, was an inmate at the Chillicothe Correctional Institution. In the course of interviews with the investigators developing the mayoral report, Jones alleged, inter alia, that appellant had fathered an illegitimate child by a minor prostitute, and this allegation is reported, with extensively expressed reservations as to its reliability, in the final draft of the mayoral report. Certain comparable statements by two unnamed Columbus-area prostitutes were also included in the report, and although appellant's claims regarding these have been dismissed prior to this appeal, they are frequently referenced in connection with Jones' statement and thus mentioned here only to develop the procedural sequence of the rulings rendered by the trial court.
 {¶ 4} The present case began with a re-filed complaint on July 17, 2001. On June 6, 2003, the trial court entered partial summary judgment in favor of the city, finding that the city would be immune from liability if the evidence established that the alleged defamation was intentional. The trial court denied, however, the city's motion for summary judgment to the extent that it found the city would not be immune if the alleged defamatory statements were made with reckless disregard for their falsity. The court noted that, if appellee Rice were to succeed in demonstrating that he had personally acted without such reckless disregard, the city would prevail on this issue as well.
 {¶ 5} On November 5, 2004, the trial court entered a further summary judgment in favor of Rice on all claims in the complaint with the following two exceptions: the trial court found that summary judgment would be denied "with regard to Chief Jackson's claims that he was defamed by the republication of the statements of Mr. Keith Jones and the statements of two prostitutes." (November 5, 2004 trial court decision, at 1.) On May 19, 2005, the trial court granted a renewed motion for summary judgment by Rice on the republished allegations of Keith Lamar Jones, finding that there remained no genuine issue of material fact and that reasonable minds could not conclude that Rice had acted with actual malice when republishing Jones' allegations concerning Chief Jackson. On August 29, 2005, appellant amended his complaint to delete all claims related to alleged defamation arising from republication of the statements made by the two prostitutes, thus leaving no claims from the complaint that had not been addressed by the trial court. In the interim, however, appellant had filed on June 7, 2005, a motion for reconsideration asking the trial court to revisit its grant of summary judgment in favor of Rice concerning republication of the defamatory statements by Jones. The trial court initially agreed to permit further briefing on one issue related to the motion for reconsideration, but ultimately entered final judgment for both the city and Rice without explicitly addressing the pending motion for reconsideration.
 {¶ 6} Appellant has timely appealed and brings the following three assignments of error:
1. The trial court erred in its May 19, 2005 Decision and Entry by granting Rice's January 24, 2005 supplemental motion for summary judgment.
2. The trial court erred in its June 16, 2005 Decision and Entry by partially denying Chief Jackson's June 7, 2005 motion for reconsideration.
3. The trial court erred in its August 29, 2005 Judgment Entry by failing to rule on the "one remaining issue" it agreed to reconsider in its June 16, 2005 Decision and Entry.
 {¶ 7} The city of Columbus attempts to bring a conditional cross-assignment of error:
THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT PARTIALLY OVERRULED DEFENDANT-APPELLEE CITY OF COLUMBUS' MOTION FOR SUMMARY JUDGMENT. THE TRIAL COURTS ERROR IS REFLECTED IN ITS DECISION AND ENTRY OF JUNE 6, 2003, WHEREIN THE COURT RULED THAT "PUBLIC FIGURE DEFAMATION IS NOT NECESSARILY AN INTENTIONAL TORT SINCE ACTUAL MALICE CAN BE PROVED BY PROVING RECKLESSNESS."
 {¶ 8} Despite its presentation and briefing of this assignment of error, the city of Columbus did not file a notice of cross-appeal under App.R. 3(C) in this case. The proposed assignment of error submitted by the city, therefore, may be "considered only for the purpose of preventing a reversal of the judgment under review" Parton v. Weilnau (1959), 169 Ohio St. 145, 170-171. "In other words, it may be said that an assignment of error by an appellee, where such appellee has not filed any notice of appeal from the judgment of the lower court, may be used by the appellee as a shield to protect the judgment of the lower court but may not be used by the appellee as a sore to destroy or modify that judgment." Id. at 171. See, also,Duracoat Corp. v. Goodyear Tire and Rubber Co. (1983),2 Ohio St.3d 160; R.C. 2505.22. We will therefore consider the city's proposed assignment of error only to the extent that it provides an alternative ground for affirming the judgment of the trial court, and not as a basis for reversal of any aspect of the trial court's judgment that the city wishes to alter.
 {¶ 9} Appellant's first and second assignments of error in this appeal assert that the trial court erred in assessing the evidence and granting summary judgment for appellees. Summary judgment, under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Tokles Son, Inc. v. MidwesternIndemn. Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64.
 {¶ 10} An appellate court's review of summary judgment is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588; Patsy Bard v. Society Nat. Bank, nka KeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440,445. As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. Bard.
 {¶ 11} Ohio law follows federal law and the majority of other states in setting forth the elements of defamation where the object of the alleged defamatory statements is a public official.Perez v. Scripps-Howard Broadcasting Co. (1988),35 Ohio St.3d 215, 218, certiorari denied, 488 U.S. 870, 109 S.Ct. 179. In Ohio, libel, the form of defamation at issue here, is defined generally as a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession. Becker v. Toulmin (1956),165 Ohio St. 549, 553; Cleveland Leader Printing Co. v. Nethersole (1911),84 Ohio St. 118, paragraph two of the syllabus.
 {¶ 12} Statements addressing a public official's fitness for office are constitutionally protected speech and invoke a higher burden for the defamation plaintiff. Soke v. Plain Dealer
(1994), 69 Ohio St.3d 395, 397, citing Garrison v. Louisiana
(1964), 379 U.S. 64, 85 S.Ct. 209. Public officials or public figures must demonstrate "actual malice" with convincing clarity to remove the defamatory speech from constitutional protection and establish a defamation claim. New York Times Co. v.Sullivan (1964), 376 U.S. 254, 279-280, 84 S.Ct. 710; Dupler v.Mansfield Journal Co., Inc. (1980), 64 Ohio St.2d 116, paragraph two of the syllabus. To show "actual malice," the plaintiff must prove that the statement was made "with knowledge that it was false, or with reckless disregard of whether it was false or not." New York Times, at 280. To establish reckless disregard, the plaintiff must present clear and convincing evidence that the false statements were made with a "high degree of awareness of their probable falsity," Garrison, at 74, or that "the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson (1968), 390 U.S. 727,731, 88 S.Ct. 1323.
 {¶ 13} Summary judgment procedures are particularly appropriate when addressing First Amendment free speech issues in a defamation matter. Dupler, at 120. "It is for this reason that the plaintiff's burden of establishing actual malice must be sustained with convincing clarity even when the claimant's case is being tested by the defendant's motion for summary judgment."Varanese v. Gall (1988), 35 Ohio St.3d 78, 80. Therefore, it follows that, when addressing a defendant's summary judgment motion in a defamation action brought by a public official, the trial court will consider the evidence and all reasonable inferences in a light most favorable to the plaintiff, as with other summary judgment proceedings, but with an eye to whether "the plaintiff presented affirmative evidence such that a reasonable jury could find actual malice had to been shown with convincing clarity." Burns v. Rice, 157 Ohio App.3d 620, at ¶ 24, 2004-Ohio-3228, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 257, 106 S.Ct. 2505, and Varanese, at 81.
 {¶ 14} In Varanese, the Supreme Court of Ohio extensively discussed the question of whether awareness of possible falsity would, of itself, create a genuine issue of material fact to preserve for trial the question of actual malice, and thus defeat a summary judgment motion. Accordingly, the parties and the trial court have given extensive attention and argument addressing the evidence in this case and the extent to which the investigating officers and their supervisors, including Rice, knew or should have known that the statements of Keith Lamar Jones were irredeemably unreliable and immaterial to the investigation and should thus have refrained from needlessly republishing them to the detriment of appellant's reputation. Because we adopt a slightly different analytical approach from that taken by the trial court, we focus less on quantifying the degree of residual belief in the reliability of Jones' statements that could reasonably have been entertained by the investigators, and more upon the propriety of including them in the mayoral report even with full knowledge that these statements were more likely than not to be proven false. We will accordingly view the evidence in the light most favorable to appellant as the non-moving party, and assume for purposes of this appeal that the investigating officers and appellee Rice were in fact substantially aware of the likely falsity of Keith Lamar Jones' allegations regarding appellant. We do not consider, however, evidence cited by appellant to support the contention that the statements have, since their publication, been definitively proven to be false, as actual malice must be measured as of the time of publication.Dupler, at 124.
 {¶ 15} Our determination of whether a reasonable person could find in favor of appellant on the question of whether appellees acted with actual malice will, moreover, be guided by our initial determination that the statements contained in the mayoral report are protected by a public interest privilege, and whether actual malice can be shown is thus a question to be assessed in the context of the unique protections afforded by this privilege.
 {¶ 16} Appellees do not claim the "absolute" or "unconditional" privilege afforded in Ohio to "legislative and judicial proceedings, and other acts of state." Costanzo v.Gaul (1980), 62 Ohio St. 2d 106, 108. Appellees invoke only the qualified or conditional public interest privilege recognized in Ohio. "A publication is conditionally or qualifiedly privileged where the circumstances exist, or are reasonably believed by the defendant to exist, which cast upon him the duty of making a communication to a certain other person to whom he makes such a communication in the performance of such duty, or the person is so situated that it becomes right in the interest of society that he should tell third persons certain facts, which he in good faith proceeds to do. * * * A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege would be actionable[.]" Jacobs v. Frank (1991), 60 Ohio St.3d 111,113-114. The public interest privilege will involve "`communications made to those who may be expected to take official action of some kind for the protection of some interest of the public.'" AB-Abell Elevator Co. v. Columbus/Cent. OhioBldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 9, quoting Prosser and Keaton, The Law of Torts. If the public interest privilege applies to protect otherwise actionable statements, it will be defeated in a defamation action only by a showing of actual malice. Id. The invocation of the public interest privilege therefore places non-public figures who bring a defamation action under the same burden as public figure plaintiffs in that they must demonstrate actual malice. While that is not at first blush a significant issue in the present case because appellant concedes that he is a public figure and thus must prove actual malice in any event, we believe that the indicia of actual malice in this defamation action are affected by the application of the public interest privilege and the evidence in such circumstances may be read differently than it would in a conventional action against, for example, a media defendant publishing defamatory statements under more typical circumstances.
 {¶ 17} Actual malice in the cases falling under public interest privilege, particularly in the context of an official investigation, must be assessed in light of the possible need to republish some statements, even if known to be false, as necessary products of the investigation and support for its completeness and thus reliability. The mayoral report in the present case was undertaken at the express direction of the mayor operating under Section 63 of the city charter, was carried forward by the city's safety director with cooperation of division of police officials and the State Highway Patrol. Appellant was not, in fact, initially the primary focus of the investigation, which primarily centered on gambling enterprises and a suspected prostitution ring allegedly benefiting from police protection or laxity. As a result, during the course of the investigation, many persons of questionable repute were given the opportunity to make statements, some choosing, inevitably if not necessarily truthfully, to take the opportunity to implicate various members of the division of police in illegal or immoral activity. Reproduction of these statements in the resulting mayoral report, even with knowledge that some were likely to be complete fabrications, does not establish malice solely on the basis of the possible unreliability of some of the statements. With regard specifically to the statements by Keith Lamar Jones, the report, in any event, went some length to reflect the belief of various law enforcement personnel that the source was unreliable, and could be characterized as a "scam artist," although a corroborating history of occasional reliability as a police informant was also presented. As this court held inBurns, "contrary to plaintiffs' contentions, the Report's disclosure of concerns or credibility problems regarding a source displays a lack of actual malice rather than malice." Id. at ¶ 50.
 {¶ 18} The administrative context of the mayoral report places it in the same light as an investigative report prepared by a police officer in a regular criminal matter, where the qualified privilege has been held to apply. Black v. ClevelandPolice Dept. (1994), 96 Ohio App.3d 84:
In the present case, we agree that the statements made in the internal police communications are protected by a qualified privilege. The statements were made between law enforcement officers and concern matters in which the officers have a common interest. * * * [T]his court recognizes that the officers in question have both a legal and moral obligation to speak on matters involving the investigation of alleged criminal occurrences.
Id. at 89. (Citation omitted.)
 {¶ 19} Mere republication of allegations that might be false, or even that more than likely are false, will not establish of itself actual malice in the context of the public interest privilege as applied to an official investigation. As set forth above, the republished statements by the inmate were presented with an array of qualifying doubts as to their reliability, but with the ultimate conclusion that they could not be dismissed out of hand. In the context of a case applying the qualified public interest privilege, an assessment of a defamation, defendant's "reckless disregard for the truth," necessarily must include a review of all the factors that make publication of the contested statements reasonable or unreasonable, including the public interest served by publication or impaired by suppression of the statements, the availability of time and resources to verify or disprove the contested information within the constraints of the ongoing investigation, and the extent to which the possible unreliability of the republished statements was exposed and emphasized in accompanying narrative.
 {¶ 20} We acknowledge that actual malice under the present circumstances might yet be inferred where allegation is piled upon allegation in an attempt to bury any possibility of disbelief on the part of the reader under a sheer volume of lies, no matter how many self-serving reservations accompanied the inaccuracies. Nor do we hold that a republisher may "defame freely by repeating the defamation of others and defending it as simply an accurate report of what someone else had said." Grayv. St. Martin's Press, Inc. (C.A.1 (N.H.), 2000), 221 F.3d 243,250. The record in the present case does not demonstrate actual malice on that basis. The investigating officials, including appellee Rice, were charged by the mayor with going forward with a full investigative report. Refraining from pursuing and eventually accounting for certain allegations on grounds of unreliability might well have left the investigators short of fulfilling their duty to completely and fully investigate every known avenue of information to compile the best possible assessment of the state of the division of police. The mayoral report, not only with respect to this particular inmate but many other interviewed sources, presents much evidence both for and against the credibility of the informants and witnesses, and in most cases notes that credibility could not be completely resolved without an extensive further investigation. Given the nature of the investigation and the type of witnesses encountered, to refrain from publishing any potentially defamatory allegation because of the unreliability of the informant might have left little to include in the mayoral report.
 {¶ 21} We accordingly find that the trial court did not err in granting summary judgment on the remaining claims in favor of Rice and the City of Columbus. The statements in the mayoral report were protected by qualified privilege, and the trial court did not err in finding that no reasonable person could conclude from the evidence before the court that the plaintiff could show by clear and convincing evidence that the allegedly false statements were made with actual malice. Appellant's first and second assignments of error are overruled. This is dispositive of both the judgment granted in favor of Rice and in favor of the City of Columbus, and we do not further address the arguments raised in the City of Columbus' proposed cross-assignment of error.
 {¶ 22} Appellant's third assignment of error addresses the procedural sequence followed by the trial court in arriving at the final grant of summary judgment in favor of appellees. The trial court, after initially indicating that it would consider a partial reconsideration of one of its interlocutory rulings granting partial summary judgment, and excepting briefing the issue, eventually entered the final judgment in this case without expressly ruling on appellant's motion for reconsideration. When a trial court enters final judgment without expressly ruling upon a pending motion, the motion will be considered impliedly overruled. Maust v. Palmer (1994), 94 Ohio App.3d 764, 769. In declining to rule upon the pending motion for reconsideration, the trial court both impliedly overruled it and reaffirmed its prior interlocutory judgments in the matter. The merits of the matter were at every stage fully and finally addressed by the trial court, and failure to address a motion for reconsideration does not alter the posture or merits of the case as it appears before us. We accordingly find no prejudicial error on the part of the trial court in declining to address the pending motion for reconsideration. Appellant's third assignment of error is accordingly overruled.
 {¶ 23} In accordance with the foregoing, appellant's first, second, and third assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas granting summary judgment to appellees is affirmed.
Judgment affirmed.
Brown and McGrath, JJ., concur.