HAHN, APPELLEE, *v.* KOTTEN ET AL., APPELLANTS.

(No. 74-608—Decided July 23, 1975.)

238

240

242

Messrs. *Hinton, Noble & Bryant* and *Mr. Carl William Hinton,* for appellee.

Messrs. *Vorys, Sater, Seymour & Pease, Mr. Thomas B. Ridgley* and *Mr. Thomas M. Taggart,* for appellants.

CORRIGAN, J. This cause is one of first impression before this court.

The trial judge based his decision granting directed verdicts to each of the defendants for the reason that, although some of the statements made by defendants were slanderous *per se,* the doctrine of qualified privilege applies, and the record failed to demonstrate any evidence of actual malice upon the part of defendants.

### I.
### QUALIFIED PRIVILEGE.

In an action for defamation, the plaintiff's prima facie case is made out when he has established a publication to a third person for which defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character[1]. Defendant may then invoke various defenses, if available. One of these is known as "qualified privilege," in which the interest that the defendant is seeking to vindicate is conditioned upon publication in a reasonable manner and for a proper purpose. It is also referred to as a conditional privilege. As Prosser states in his Law of Torts (4 Ed.) 786, Section 115: "* * * It is difficult to reduce the cases to any single statement, and perhaps no better formula can be offered than that of Baron Parke'

---

[1] 2 Restatement of the Law, Torts, Section 613.

[2] In *Toogood* v *Spyring* (1834), 149 Eng. Rep. 1044, 1 Crompton, Meeson and Roscoe 181.

244

that the publication is privileged when it is 'fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.' "

A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it. Frequently, in such cases, there is a legal, as well as a moral, obligation to speak[3]. This is most obvious in the case of those who have entered upon or are considering business dealings with one another[4].

As stated in 50 American Jurisprudence 2d 698, Libel and Slander, Section 195:

"Conditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, *and makes a showing of falsity and actual malice essential to the right of recovery.*

"A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. *The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.*" (Emphasis added.)

The threshold question in this case is whether the statements about Hahn made by the individual defendants to those persons who testified concerning those conversations were qualifiedly privileged. All these witnesses, except one, were insureds of Woodmen being serviced by

[3]Prosser, Law of Torts (4 Ed.), 789, Section 115(3).
[4]*Johns* v. *Associated Aviation Underwriters* (C. A. 5, 1953), 203 F. 2d 208 (insurer's obligation to speak about insured).

Hahn immediately prior to his termination. The trial court properly found that those statements were qualifiedly privileged and that without some evidence of actual malice on the part of the defendants in the record, the court was required to grant defendants a directed verdict.

In the conversations between the individual defendants and the insureds of Woodmen it is apparent that the individual defendants followed the recommendation of E. J. Faulkner, president of Woodmen, that they were to advise each insured called upon that Hahn had been separated from Woodmen's employment, and say nothing further unless pressed. If pressed by an insured as to why Hahn was dismissed, they were to show the insured their district manager's contract and specifically the provision dealing with cause for termination. The insureds who were called by Hahn as witnesses were all doing business with Woodmen at the time of his termination and subsequently transferred their insurance to Hahn's new company. In these circumstances, Woodmen had a common interest with each insured, and such a communication as made to each of them about Hahn was reasonably calculated to protect or further it. In addition, there was a legal and moral obligation to speak.

The principle of the qualified privilege has been defined and applied in a well-considered Ohio appellate case, *West* v. *People's Banking & Trust Co.* (Washington County, 1967), 14 Ohio App. 2d 69. In that case, an official of the defendant bank told a commercial borrower and depositor of the bank that plaintiff had sold appliances "out of trust" and failed to remit the proceeds. The official also stated that if the party employed the plaintiff, the bank would not make a loan to it. West sued the bank for slander and the court held that West had no cause of action since the communication was qualifiedly privileged:

" 'A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to

whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. *The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.'* " (14 Ohio App. 2d, at 72, citing 33 American Jurisprudence 124, Section 126.)

" '* * * "All that is necessary to entitle such communications to be regarded as privileged is, that the relation of the parties should be such as to afford reasonable ground for supposing an innocent motive for giving information, and to deprive the act of an appearance of officious intermeddling with the affairs of others."

" 'It is generally held that if the defendant publishes the defamatory words to the person interested at the latter's request or solicitation, there is such a relationship between the parties to justify the communication." Everyone owes it as a duty to his fellowmen to state what he knows about a person, when inquiry is made; otherwise no one would be able to discern honest men from dishonest men. It is highly desirable, therefore, that a privilege of this sort should be maintained." * * *' " (14 Ohio App. 2d at 74, citing 1 Harper and James, The Law of Torts, page 445, Section 5.26.)

Although no Ohio cases apply the qualified privilege to communications between insurers and insureds, commentators have, *e. g.,* 1 Hanson, Libel and Related Torts 99, Paragraph 130:

"Defamatory statements are conditionally privileged if they pertain to or are motivated by the existence of some special relationship such as the family, lawyer-client, doctor-patient, or *insurer-insured relationship.* It is generally accepted as appropriate and desirable that one will take steps to protect the interests of another with whom he shares such a relationship." (Emphasis added.)

Furthermore, there are cases in other jurisdictions which have applied the qualified privilege to communications between an insurer and its insureds. The Missouri Court of Appeals recognized such a qualified privilege in *Trice* v. *Lancaster* (Mo. App., 1954), 270 S. W. 2d 519. In that case, an insurance agent brought suit against an insurance company and its branch office manager alleging slander, almost identical in content to that asserted in the case before this court. In that case, a branch office manager for the insurance company suspected that the plaintiff agent was wrongfully withholding premiums from the company (similar to the circumstances surrounding Hahn's termination). He contacted the policyholders in the course of an investigation and explained what he suspected, namely, that plaintiff had been wrongfully withholding premiums. Plaintiff sued for slander. In holding that the defendants were entitled to assert the defense of qualified privilege, the court stated, at page 528:

"Defendants were entitled to assert the defense of qualified privilege. Having received complaints from policyholders, and having learned that plaintiff was not reporting premiums promptly, Lancaster [branch manager] had a direct interest in ascertaining the facts, and his communications to interested policyholders, if made in good faith, without express malice and with probable grounds for belief, in the course of an investigation of plaintiff's debit, for the protection of his company's and his own interests, could be found qualifiedly privileged."

Hahn admitted at trial that he had diverted company (or insureds') funds to his own use for two years; he had withheld premium payments from the company and kept them in his personal business account; he had lied to the company about the whereabouts of additional company funds; and it is uncontradicted that he was in arrears in remitting more than $5,000 on group premium payments to the company. Under these circumstances, defendants certainly had the legal and moral obligation to communicate as they did with the insureds of Woodmen, and those statements were qualifiedly privileged.

## II.
### MALICE.

The correct rule as to the type of malice required to be established by plaintiff in connection with qualified privilege cases is simply and clearly stated in the Ohio Court of Appeals' decision of *DeAngelo* v. *W. T. Grant Co.* (1952), 64 Ohio Law Abs. 366:

" ' \* \* \* In the case of a privileged communication, however, express malice as distinguished from malice in law must be shown; that is to say, if the occasion be privileged, the plaintiff may not recover, although he proves that defendant used language actionable per se and that the same was false, unless he goes further and shows *that in using same, defendant was moved by actual malice, such as ill will, spite, grudge or some ulterior motive.*' " (Emphasis added.)

The record before us does not demonstrate any such *indicium* of actual malice. (See *New York Times Co.* v. *Sullivan* [1964], 376 U. S. 254.) In its opinion, the Court of Appeals said:

"In this instance the communications included not only references to plaintiff's losing his license thereby being unable to sell insurance and his being unfit to sell insurance, but also the display of the district manager's contract from which it could be inferred that defendant had committed either embezzlement, fraud, willful violation of the contract or of an insurance law or regulation or any combination of these. This coupled with Woodmen's letter suggesting

to the insureds that they should contact defendant Stough or defendant Scott should anyone attempt to sell them a different coverage all when considered most favorably to plaintiff could give rise to an inference that defendant's concern might not be the protection of its insureds but rather inhibiting or preventing plaintiff in selling his former customers new coverage. This is particularly so in view of the fact that plaintiff was still licensed and selling insurance as of the date of trial.''

The Court of Appeals concluded that this ''inference'' of motive was sufficient evidence of actual malice on the part of defendants to send the case to the jury.

We do not agree. The Woodmen communications to its insureds were patently efforts to keep its contractual relationships with them and thereby preserve its business, which it had a right to do. And a qualified privilege arises when such communications are made ''in which the person communicating has an interest.''[6] Communications thus made to insureds do not give rise to an inference of malice.

### CONCLUSION.

The trial court correctly decided that the qualified privilege applied to all statements made by Woodmen and its agents to insureds of Woodmen and further applied to statements made by defendant Stough to David Barlow. The trial court also correctly found that plaintiff had failed to introduce any evidence that defendants had been motivated by actual malice in making the statements about Hahn to those persons who were called as witnesses by the plaintiff.

Accordingly, the judgment of the Court of Appeals is reversed and the judgment of the Court of Common Pleas is reinstated.

*Judgment reversed.*

O'NEILL, C. J., HERBERT and P. BROWN, JJ., concur.
STERN, CELEBREZZE and W. BROWN, JJ., dissent.

[6] 50 American Jurisprudence 2d 698, Libel and Slander, Section 195.

STERN, J., dissenting. While I agree with the majority that under the circumstances of this case the communication of the insurance company to its insured was qualifiedly privileged, I cannot agree with the majority's holding that only actual malice is sufficient to prove an abuse of that privilege, or with its statement that the maintenance of business relationships is a proper purpose which comes within the privilege.

The difficulties with limiting the qualified privilege of defamation to actual malice have been pointed out by the commentators. See Evans, Legal Immunity For Defamation, 24 Minn. L. Rev. 607, 609-12. As Prosser, Law of Torts (4 Ed.), 794-95, states: "* * * The word 'malice,' which has plagued the law of defamation from the beginning, has been much used * * * and it frequently is said that the privilege is forfeited if the publication is 'malicious.' * * * Perhaps the statement which best fits the decided cases is that the court will look to the primary motive or purpose by which the defendant is apparently inspired. Discarding 'malice' as a meaningless and quite unsatisfactory term, it appears that the privilege is lost if the publication is not made primarily for the purpose of furthering the interest which is entitled to protection. If the defendant acts chiefly from motives of ill-will, he will certainly be liable; and the vehemence of his language may be evidence against him in this respect. But he will likewise be liable if he publishes his statement to accomplish a distinct objective which may be legitimate enough in itself but which is not within the privilege * * *."

In the instant case, the insurance company had a qualified privilege with regard to informing its customers of the termination of employment of its agent and of the reasons therefor. That privilege was limited to the duty involved—the duty to inform insureds of the reasons for the change in their business relationship. I cannot agree that the company possessed any privilege to defame in order to protect its business interests against the competition of the one defamed, nor does the majority cite any authority for that

proposition. Since, as the Court of Appeals stated, an inference could be drawn that the company's purpose was not within the privilege, the case should have been submitted to the jury.

In particular, the evidence in this case appears to me to raise an issue for the jury of whether the actions of the company constituted unnecessary defamation. As stated in 50 American Jurisprudence 2d, 805, Section 287:

"Unnecessary defamation is not contenanced, and one who goes beyond what a qualifiedly privileged occasion demands by being unnecessarily defamatory is not protected. It must appear that the publisher of the defamation was compelled to employ the words complained of, and if he could have done all that his duty or interests demanded without libeling or slandering the plaintiff, his imputations are not privileged.

"Whether or not a publication went beyond what the occasion required generally is a question of fact for the jury."

The rule that actual malice is necessary to defeat the qualified privilege is one which has not been adopted by this court,[6] and I believe it unfortunate that the actual malice rule is here adopted by the court to determine whether the privilege has been abused. Rather, I would suggest that the proper rule, as stated by Prosser, *supra* at 796, "is that the defendant is required to act as reasonable man under the circumstances, with due regard to the strength of his belief, the grounds that he has to support it, and the importance of conveying the information.

"* * * *

"* * * Once the existence of the privilege is establish-

---

[6] In *Westropp* v. *E. W. Scripps Co.* (1947), 148 Ohio St. 365, 74 N. E. 2d 340, the court held that the analogous privilege of fair comment on matters of public concern was lost by actual malice, and also by knowledge of the falsity of stated facts, upon which a statement of opinion was based. The precise holding in this case has been superseded by the United States Supreme Court decision in *New York Times Co.* v. *Sullivan* (1964), 376 U. S. 254.

ed, the burden is upon the plaintiff to prove that it has been abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what is said. Unless only one conclusion can be drawn from the evidence, the determination of the question whether the privilege has been abused is for the jury. * * * "

In the instant case, I agree with the Court of Appeals that the question of whether the privilege was abused was for the jury, and accordingly, I dissent.

CELEBREZZE and W. BROWN, JJ., concur in the foregoing dissenting opinion.