829 F.2d 36
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Stephen SNUFFER, d/b/a Snuffers Insurance Agency, Plaintiff-Appellee,
v.
MOTORIST MUTUAL INSURANCE, a corporation, Defendant-Appellant.
 No. 86-1725
 United States Court of Appeals, Fourth Circuit.
 Argued June 2, 1987.
Decided September 9, 1987.
 
 Christopher Paul Bastien, Gordon Harrison Copland (Steptoe & Johnson, on brief), for appellant.
 Kevin B. Burgess (Hamilton, Mooney, Burgess, Young & Tissue, on brief), for appellee.
 Before HORRISON L. WINTER, Chief Judge, WILKINS, Circuit Judge, and SMALKIN, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Plaintiff Stephen Snuffer filed suit against Motorists Mutual Ins. Co. ('Motorists') for damages allegedly relating to the termination of Snuffer's contract as an independent agent for Motorists. The district court granted defendant's motion for summary judgment on all but two of plaintiff's claims, and the case was submitted to the jury on the theories of slander and tortious interference with prospective contractual relations. The general verdict awarded to plaintiff $9,000 in compensatory damages and $75,000 in punitive damages. The district court denied defendant's motion for judgment notwithstanding the verdict or a new trial, and defendant appeals. We affirm.
 
 
 2
 The slander claim arose in relation to an automobile insurance policy that Snuffer had sold to Beckley Honda, his largest commercial client. In November 1982, Snuffer issued to Beckley a certificate of insurance six days after Beckley's coverage had lapsed due to nonpayment of premiums.[1] Both Snuffer and Beckley claimed that they received no notice of the policy cancellation. Believing that its coverage was still in effect, Beckley subsequently filed a claim and thereby prompted an investigation by Motorists. Motorists had a general policy of paying claims in these circumstances (where an insured is misled by an agent's actions), as long as it is the type of risk that the company would otherwise have insured under a valid policy. Motorists thus decided to pay Beckley's claim. Motorists could have recovered from Snuffer, under his errors and omissions ('E & O') policy with Motorists, any premium that the company lost in this process. In this case, however, the Motorists Policy Board concluded that proper, albeit belated, processing of Beckley's previous request for a change in coverage (see supra note 1) resulted in no financial loss to the company, and thus no E & O claim against Snuffer. This Policy Board decision was made in early February, 1983.
 
 
 3
 Several weeks later, in March 1983, Robert Blackburn, a Motorists employee, received a call from Norbert Bruns, a former Motorists employee who now worked at Shelby Mutual. Snuffer had applied for a job at Shelby, and James Kennedy, a managerial employee at Shelby, asked Bruns to use his contacts at Motorists to obtain information about Snuffer. Blackburn responded to the inquiry by telling Bruns about the Beckley incident. The precise language he employed is in dispute. Blackburn testified that he told Bruns 'that we had a possible E and O claim.' Bruns testified that Blackburn told him there was 'a possible alleged E and O claim.' In a memo to Kennedy that was prepared by Bruns shortly after the conversation, Bruns wrote: 'There is also an E & O claim on a commercial policy (Honda dealer).' Blackburn had himself prepared the document that reported the Mutual Policy Board's decisions with respect to both the Beckley claim and the E & O claim.
 
 
 4
 The tortious interference cause of action relates to Snuffer's efforts to sell to other agents his book of Motorists insureds. Snuffer approached Earl Shrewsberry, another independent agent for Motorists, about the possibility. Shrewsberry contemplated purchasing the book for approximately $9,000, but eventually decided against it when advised by several Motorists employees that the poor loss ratio of Snuffer's policies could threaten Shrewsberry's agency contract with Motorists. Snuffer's business thus reverted back to Motorists.
 
 
 5
 Motorists challenges the submission to the jury of both the slander and tortious interference claims, as well as the damages awarded under the general verdict. Although the proof to support both claims was slender, we feel constrained to affirm the judgment entered by the district court.
 
 I.
 
 6
 Defendant challenges submission of the slander claim on several grounds.
 
 
 7
 Motorists contends that Blackburn's statement to Bruns regarding a (possible) (alleged) E & O claim, was not false. Motorists insists that the evidence clearly shows that Blackburn qualified his statement with the words 'possible' and/or 'alleged.' However, the memo that Bruns prepared for Kennedy suggests otherwise, and the jury was free to believe that the memo more accurately reflected Bruns' recollection of the conversation than did the trial testimony 3 years later.[2] Even if we assume that Blackburn did use those qualifiers, the jury could still legitimately conclude that the statement was false. It would not have been unreasonable for the jury to have interpreted the statement to mean that there may yet be a claim against Snuffer under his E & O policy. Under this interpretation, the statement would have been false, since the Motorists Board had rejected such a possibility several weeks prior to Blackburn's conversation with Bruns. Although Blackburn did tell Bruns that Motorists had decided to pay Beckley's claim, it does not necessarily follow that Bruns knew (or that Blackburn told him) that this meant that no E & O claim would be pursued. Apparently, Motorists could simultaneously have decided to pay Beckley's claim and to pursue the lost premium, had there been any, under Snuffer's E & O policy.
 
 
 8
 In this ambiguous factual setting, we think it was proper to let the jury determine whether Blackburn's statement was true or false.
 
 
 9
 Motorists also finds fault in the district court's ruling that Blackburn's statement, if false, was defamatory per se. We perceive no error in this ruling.
 
 
 10
 The district court correctly noted that slander in one's business, trade, profession, or office is one category of defamation per se that is recognized by Ohio law, which both parties agree is controlling here. No proof of damages is necessary as long as the defamation is 'of a kind incompatible with the proper conduct of the business trade, profession or office itself.' Motley v. Gombos, 153 N.E. 2d 465, 466 (Ohio Com. Pl. 1958) (quoting Prosser on Torts).
 
 
 11
 Even an allegation of a single act of misconduct, though ordinarily insufficient, can establish a claim of slander per se 'if it fairly imputes habitual conduct, or a lack of qualities, which the public has a right to expect of the plaintiff in his calling. . . .' Id. at 467 (also quoting Prosser). In this case, accusing plaintiff of creating an errors and omissions claim could severely damage his reputation in the insurance industry, and thus qualifies as slander per se.[3]
 
 
 12
 Yet even if slanderous per se, Blackburn's statement would not support liability if Blackburn was privileged in making it. The district court properly concluded that Blackburn's reply to an inquiry from a prospective employer was entitled to a qualified privilege. See Gray v Allison Div., General Motors Corp., 370 N.E. 2d 747, 750 (Ohio App. 1977); Hahn v. Kotten, 331 N.E. 2d 713, 718-20 (Ohio 1975); Prosser and Keeton on The Law of Torts, Sec. 115 (5th ed. 1984). Once such a privilege is established, the burden shifts to the plaintiff to prove that Motorists abused the privilege either by exceeding its scope--not true here--or by acting principally from actual malice. See Gray, 370 N.E. 2d at 750; Hahn, 331 N.E. 2d at 718, 721; Prosser and Keeton, Sec. 115. Plaintiff here alleges that Blackburn knew that there was no E & O claim against Snuffer several weeks before Blackburn's conversation with Bruns. Although the circumstances render ambiguous the meaning of Blackburn's statement, there was evidence from which the jury could infer actual malice, and we think it was not error to allow the jury to do so.
 
 
 13
 Motorists argues that, if based on the slander claim, the compensatory damage award of $9,000 was excessive. Yet if, as we hold, the district court correctly ruled that the statement was defamatory per se, the jury was properly accorded wide latitude in assessing the value of Snuffer's 'mental anguish.' See Prosser and Keeton, Sec. 112.[4]
 
 II.
 
 14
 Both parties accept the principles of Torbett v. Wheeling Dollar Savings & Trust Co., 314 S.E. 2d 166 (W. Va. 1983), as accurately defining the parameters of a tortious interference claim. Pursuant to Torbett, defendant invokes the affirmative defense of giving 'honest, truthful requested advice.' Id. at 167. Motorists points out that Shrewsberry inquired of several Motorists' employees as to the impact of purchasing Snuffer's book of insureds, and claims that the responses--that such a move 'could jeopardize' Shrewsberry's contract with Motorists--were honest and truthful, and thus privileged. The fact that another Motorist supervisor testified that he had never known an agency contract to be cancelled because of loss ratios does not necessarily conflict with the warning that very poor ratios 'could jeopardize' one's contract--its profitability, if not its continued existence. Even so, a malicious motive, if proven, could be a proper basis for liability. See id. at 172-73.
 
 
 15
 Snuffer claims that the advice given to Shrewsberry was motivated by Motorists' desire to keep Snuffer's business. If true, Motorists nonetheless has a valid justification for the advice, under Torbett, 314 S.E. 2d at 167, 172-73 ('legitimate competition' or interest in another's business qualify as legitimate grounds for interference). However, Snuffer's claim that one employee, John Bishop, was motivated by a grudge against Snuffer, could deprive Motorists of a legitimate excuse. It is uncertain whether such was in fact Bishop's motive in the advice he gave, and whether his advice was significant in convincing Shrewsberry not to buy Snuffer's book. But there was evidence, albeit weak, to support a verdict on this count.
 
 III.
 
 16
 Under Ohio law, plaintiff can recover punitive damages from the corporation only if he can establish that the tortious conduct was authorized, ratified, acquiesced in or participated in by the corporation. Gray v. Allison Div., General Motors Corp., 370 N.E. 2d 747, 752 (Ohio App. 1977). Motorists claims that plaintiff failed to satisfy this burden, and was thus not entitled to punitive damages from the company. It is doubtful whether this claim, at least insofar as it may relate to the tortious interference count, was properly preserved for appeal. Even if it was, it offers defendant scant assistance. An employee whose actions are undertaken within the scope of his employment, as is true in this case, has been authorized by the company so to act. See id. Moreover, corporate agents employed in a managerial capacity, and acting in the scope of that employment, as many, if not all, of the employees involved here apparently were, can subject a corporation to liability for punitive damages. See Rest. (2d) Torts, Sec. 909.[5]
 
 
 17
 We sympathize with defendant's complaint that the punitive damages award seems disproportionate to the actual damages sustained. However, under federal law, which governs our assessment of this issue, we cannot say that the district court so abused its discretion as to warrant overturning its entry of judgment on the verdict.
 
 
 18
 In support of its claim that the jury acted out of misplaced passion, Motorists cites the closing argument of plaintiff's counsel, in which it was implied that Motorists was a defendant with big pockets, against which a substantial damage award was necessary for purposes of punishment and deterrence. Although Motorists objected to this argument, we find no evidence that it sought either a curative instruction or a mistrial on this basis. Moreover, the court instructed the jury, on its own initiative, that it was not to award damages based on 'sympathy, economic worth or speculation.' No ground for reversal is evident.
 
 
 19
 In sum, we affirm the district court's entry of judgment on the verdict returned by the jury. There was evidence in the record on which the jury could have based verdict and we perceive no reversible error.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 It seems that the premium deficiency was due to a failure to process properly a timely request by Beckley for a change in the policy coverage
 
 
 [2]
 Defendant argues that the memo was improperly admitted into evidence. Although Bruns testified that he did not prepare the document as part of his regular duties for Shelby, it is clear that compilation of such documents--by various employees--was a normal part of Shelby's procedures for investigating prospective employees. Fed R. Evid. 803(6) requires only that records be prepared by 'a person with knowledge,' and 'kept in the course of a regularly conducted business activity, . . . if it was the regular practice of that business activity to make the memorandum, . . ..' Accordingly, we see no error in admitting the Bruns memo
 
 
 [3]
 Motorists also argues that Blackburn's statement could not be considered defamatory at all, let alone defamatory per se. This argument is based on the principle that the meaning of a communication--i.e., defamatory or not--depends on how the recipient understood it, even if (reasonably) mistaken. Rest. (2d) Torts, Sec. 563. In this case, Motorists contends that Bruns understood Blackburn to describe only a possible, alleged E & O claim, a contention which the jury was free to disbelieve. Even had the jury credited this version, a false representation of a possible E & O claim could nonetheless have a negative impact on Snuffer's business reputation, and thus be defamatory. In addition, the jury was at liberty to disbelieve Bruns' testimony that he did not consider Blackburn's statements to be derogatory
 
 
 [4]
 If, as seems more likely, the $9,000 was awarded for the tortious interference claim, and was derived from Shrewsberry's testimony that he had contemplated paying $9,000 for Snuffer's book of insureds', the award is easily understandable
 
 
 [5]
 Motorists also contends that the evidence of malice as to both the defamation and tortious interference counts was insufficient to justify an award of punitive damages. These claims have essentially been dealt with supra
 Motorists additionally argues that the standard for liability for punitive damages must be higher than that for compensatory damages, and that the same evidence of malice cannot satisfy both. The Supreme Court has, however, explicitly rejected this argument. See Smith v. Wade, 461 U.S. 30, 51-55 (noting that common law has never required higher threshold for punitive damages).