THOMPSON, Appellant,

v.

WEBB et al., Appellees; Cargile et al.

[Cite as *Thompson v. Webb* (1999), 136 Ohio App.3d 79.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990027.

Decided Dec. 23, 1999.

80

*David J. Boyd,* for appellant.

*Newman & Meeks Co., L.P.A.,* and *Lisa T. Meeks,* for appellees.

---

SUNDERMANN, Judge.

Plaintiff-appellant, Leonard Thompson, filed a twenty-count complaint against Carol Cargile, Kim Cargile, Lea Webb, the Cincinnati Chapter of the National Organization for Women ("Cincinnati NOW"), and Kate Curry. Curry is no longer a defendant because she was never served with a copy of the complaint, which led the trial court to dismiss the claims against her in April 1998. Carol Cargile, Kim Cargile, Webb, and Cincinnati NOW filed separate motions for summary judgment, which were granted by the trial court. Thompson appealed the entry of summary judgment for Kim Cargile, Webb, and Cincinnati NOW, but he no longer wishes to proceed against Kim Cargile. Accordingly, the only remaining appellees are Webb and Cincinnati NOW.

In his complaint, Thompson asserted, among other things, claims against both Webb and Cincinnati NOW for defamation and claims against Webb individually for tortious interference and obstruction of justice. Specifically, in count seventeen, Thompson alleged that Webb and Cincinnati NOW had made defamatory comments in a September 2, 1996 newspaper article published by the Cincinnati Post. The September 2 article, written by Michael Clark and entitled "Abused women defy court, face jail," described how a woman could face criminal sanctions if she denied her child's father visitation rights because of alleged instances of abuse. In the article, Webb, the president of Cincinnati NOW, identified two recent domestic relations cases involving mothers who were allegedly abused and who, as a result of that abuse, had defied court orders awarding visitation to fathers. The article did not mention the names of parties involved in the cases. In his eighteenth count, Thompson alleged that Webb had made false and slanderous statements with the intent to tortiously interfere with the conduct and outcome of judicial proceedings in the domestic relations court and with the intent to obstruct justice. And, in his nineteenth count, Thompson maintained that Cincinnati NOW and Kate Curry had defamed him in a September 4, 1996 article appearing in the Cincinnati Post. The September 4 article, also written by Michael Clark and entitled "Mom may defy judge to stop visit," related how Kim Cargile had denied visitation to Thompson after he had "attacked her when she was picking up her daughter after an overnight visit with him." Apparently, contempt charges were filed against Cargile after the incident, and, at the hearing, the judge ordered visitation rights for Thompson. The article stated that Cincinnati NOW was "angered" by the judge's order concerning visitation rights.

Webb and Cincinnati NOW jointly filed a motion for summary judgment. In support of their motion, Webb and Cincinnati NOW maintained that summary judgment should be granted as to the defamation claim against them, because, even if the court were to assume that the remarks were in fact defamatory, they were nevertheless protected by a qualified privilege. Further, it was argued that summary judgement was appropriate as to Webb on the tortious interference and obstruction of justice claims because Thompson had failed to provide any evidence establishing how the outcome of the judicial proceedings in domestic relations court was affected by Webb's remarks.

The trial court granted summary judgment, but did not issue an opinion. Thompson now raises two assignments of error, neither of which is well taken.

Thompson's first assignment of error alleges that the trial court erred in overruling his motion to strike certain portions of Webb's affidavit in support of the motion for summary judgment. While Thompson concedes on appeal that paragraphs numbers two, three, twenty-two, twenty-five, twenty-six, and thirty-

four were admissible, he maintains that the remaining statements were inadmissible, because they were self-serving declarations. Thompson, however, does not cite any Rule of Evidence precluding the admission of the statements found in Webb's affidavit.

Civ.R. 56(E) states:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."

Evid.R. 402 provides that all relevant evidence is admissible, provided that it is not otherwise in conflict with applicable constitutional and statutory provisions, or other Rules of Evidence. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [1]

After reviewing the challenged paragraphs, we conclude that Webb's statements were clearly related to the qualified privilege defense raised in support of the motion for summary judgment. Webb was the president of Cincinnati NOW from January 1996 through May 1997 and vice-president of the organization in 1995. In her affidavit, she essentially described Cincinnati NOW's mission, why and how the education program was organized, what actions were taken to implement the education program, how Cincinnati NOW became involved in Kim Cargile's case, and what she had revealed to Michael Clark at the Cincinnati Post. Because these statements were based on personal knowledge and were relevant to the qualified privilege defense, we conclude that the trial court did not err in overruling Thompson's motion to strike. Accordingly, we overrule the first assignment of error.

In his second assignment of error, Thompson asserts that the trial court erred in granting summary judgment to Webb and Cincinnati NOW. When reviewing the propriety of summary judgment, we review the record *de novo* to determine whether summary judgment is appropriate. [2] In making a motion for summary judgment, the moving party bears the initial responsibility of stating the basis for its motion and pointing to materials, such as the pleadings, depositions, or answers to interrogatories, that demonstrate the absence of a genuine issue of fact. [3] Once the moving party properly supports a motion for summary judgment,

---

1. Evid.R. 401.

2. See *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411, 599 N.E.2d 786, 788.

3. See Civ.R. 56(C); *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 276.

**84**

the nonmoving party has the reciprocal burden of specificity on any issue on which the nonmoving party bears the burden of proof at trial.[4]

■ This case, as it relates to the defamation claim, turns on whether the doctrine of qualified privilege was available as a defense. Webb and Cincinnati NOW maintain that, even if the remarks appearing in the two Post articles were defamatory, the qualified privilege defense applied to the remarks. We agree.

■ In *Hahn v. Kotten*,[5] the Ohio Supreme Court first recognized the qualified privilege defense in a defamation action. The concept of qualified privilege is based in public policy, and is, therefore, applicable where society's interest in being protected by the dissemination of information outweighs the loss of reputation to the person defamed.[6] Implicit in this defense is a commonality of interests between the speaker and the recipient, and a public or private duty, either legal or moral, to speak on the matter.[7] Thus, in order to establish a qualified privilege defense, the defendant must show that (1) the publication was made in good faith, (2) there was an interest to be upheld, (3) the publication was limited in scope to that interest, (4) the publication was made on a proper occasion, and (5) the publication was done in a proper manner and to the proper parties.[8]

Based on the record, we conclude that the remarks by Webb and Cincinnati NOW in the two Cincinnati Post articles were covered by the affirmative defense of qualified privilege. The remarks appear to have been made in good faith. Webb, as the organization's president, was acting on behalf of Cincinnati NOW when making her remarks to the newspaper reporter because Cincinnati NOW perceived itself as an advocate for abused women and children. As an advocate, Cincinnati NOW had established an educational program to raise public awareness about the obstacles abused women and children faced in domestic relations proceedings. In particular, the goal of Cincinnati NOW was to obtain legislation that would educate the courts about how to better deal with women and children

---

**4.** See Civ.R. 56(E); *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, 1170; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

**5.** (1975), 43 Ohio St.2d 237, 72 O.O.2d 134, 331 N.E.2d 713.

**6.** See *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 8, 651 N.E.2d 1283, 1290.

**7.** See *A & B–Abell Elevator Co., supra; Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 113–114, 573 N.E.2d 609, 612; *Hahn v. Kotten*, 43 Ohio St.2d at 244, 72 O.O.2d at 138–139, 331 N.E.2d at 718–719.

**8.** See *A & B–Abell Elevator Co., supra; Jacobs v. Frank*, 60 Ohio St.3d at 114, 573 N.E.2d at 612; *Hahn v. Kotten*, 43 Ohio St.2d at 244, 72 O.O.2d at 138–139, 331 N.E.2d at 719.

who were victims of abuse or incest. Although Cincinnati NOW's interest was rather broad, it is clear, upon review of the articles, that the remarks made to the Cincinnati Post were limited to that interest. Moreover, the remarks were proper because they were made to a local newspaper and tracked local cases in which a mother was confronted with a decision about whether to adhere to a court's visitation order. Thus, they were made on a proper occasion, in a proper manner, and to the proper parties.

Although a qualified privilege does not change the actionable quality of the words published, it rebuts the inference of malice.[9] Thompson could nevertheless have defeated the privilege by presenting clear and convincing evidence that the remarks were made with actual malice.[10] Actual malice may be shown by establishing that statements were made with the knowledge that they were false or with reckless disregard for their truth.[11] Reckless disregard may be established by evidence showing that the alleged defamer had serious doubts about the truth of the statements.[12]

Thompson claims that Cincinnati NOW and Webb acted with reckless disregard for the truth because they failed to properly investigate the facts surrounding Thompson's domestic relations case. A failure to investigate will not, in the absence of evidence that the alleged defamer entertained serious doubts about the statements in question, defeat a qualified privilege.[13] Thompson points to nothing in the record demonstrating that Webb or Cincinnati NOW entertained any doubts concerning their remarks. Furthermore, after reviewing the record, we conclude that there is no evidence demonstrating that the remarks were made with knowledge that they were false or in reckless disregard of the truth. As a result, summary judgment was properly granted as to the defamation claims.

Thompson also alleges in the second assignment of error that the trial court erred in granting summary judgment on the tortious interference and obstruction of justice claims brought against Webb. Thompson cites no law, state or federal, in support of this argument, and we have found no Ohio case recognizing a claim for tortious interference with a judicial proceeding. General-

---

9.  See *Hahn v. Kotten*, 43 Ohio St.2d at 244, 72 O.O.2d at 138–139, 331 N.E.2d at 718.

10. See *Jacobs v. Frank*, paragraph two of the syllabus; *Hahn v. Kotten*, paragraph two of the syllabus.

11. See *id.*

12. See *A & B–Abell Elevator Co.*, 73 Ohio St.3d at 12–13, 651 N.E.2d at 1293–1294.

13. See *id.*

ly, tortious interference cases involve contractual and business relations.[14]  Furthermore, obstruction of justice claims, which are actionable under R.C. 2921.32, typically concern criminal, not civil, proceedings.  However, even if the claims in this case were facially actionable, Thompson failed to present any evidence showing how Webb's remarks to the Cincinnati Post affected the proceedings in domestic relations court.  As a result, we conclude that Thompson's claims could not withstand summary judgment, and we overrule his second assignment of error.

In sum, we hold that the trial court did not err in refusing to strike Webb's affidavit and in granting summary judgment to Webb and Cincinnati NOW. Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*

SHANNON, J., concurs.

GORMAN, P.J., concurs in judgment only.

RAYMOND E. SHANNON, retired, of the First Appellate District, sitting by assignment.

---

14.  See, *e.g.*, *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863.