OPINION
{¶ 1} Plaintiff-appellant, Ann Taylor Miller, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, City of Columbus ("City"), Columbus Police Detective Gerald Milner, and Central Ohio Crime Stoppers, Inc. ("Crime Stoppers"). We affirm because plaintiff failed to create a genuine issue of material fact whether (1) any exception to the statutory *Page 2 
immunity afforded the city or Milner applies in this case, and (2) Crime Stoppers acted with actual malice.
 {¶ 2} On May 22, 2005, the Columbus Dispatch, under the auspices of Crime Stoppers, published a "Most Wanted" bulletin that identified individuals with outstanding warrants. As part of his responsibilities as the Columbus Division of Police's liaison with Crime Stoppers, Detective Milner selected the individuals to be featured. Because a warrant previously issued against plaintiff for bribery and intimidation of a victim, plaintiff's name and photograph were included in the publication. At the time of publication, however, the warrant no longer was valid, and plaintiff had no other outstanding warrants against her. Her attorney contacted Crime Stoppers, and a retraction was issued in the May 27, 2005 edition of the Columbus Dispatch.
 {¶ 3} On May 18, 2006, plaintiff filed a complaint against Crime Stoppers, the City, and the Columbus Dispatch, amending the complaint on April 17, 2007 to add Milner as a defendant. The Columbus Dispatch was dismissed, and the City, Crime Stoppers and Milner all filed separate motions for summary judgment.
 {¶ 4} In resolving the motions, the trial court determined the City and Milner were entitled to immunity pursuant to R.C. Chapter 2744. While plaintiff asserted that Milner's recklessness in failing to properly verify whether her warrant was still active rendered him and the City potentially liable, the trial court concluded plaintiff presented no evidence Milner possessed the requisite scienter to impose liability under the statute. Similarly, because the trial court determined plaintiff set forth no evidence that Crime Stoppers failed to act in good faith in submitting plaintiff's information to the newspaper for publication, the trial court concluded a qualified privilege protected Crime Stoppers from *Page 3 
liability for defamation. Accordingly, the trial court granted defendants' summary judgment motions.
 {¶ 5} Plaintiff appeals, assigning two errors:
 1. The trial court impermissibly decided disputed issues of fact in accepting, without apparent question, the interpretation advocated by Defendants-Appellees and refusing to acknowledge that there exists a very reasonable inference that Detective Milner completely failed to verify that Ann Miller's warrant was not active and, in so doing, acted in a manner rendering both he and the City of Columbus liable to Plaintiff-Appellant.
 2. The trial court erroneously determined that Crime Stoppers acted in "good faith" in forwarding incorrect information regarding Ann Miller to the Columbus Dispatch for publication identifying her as one of the 10 "Most Wanted" criminals despite the fact that Crime Stoppers relied on nothing more than Detective Milner's assertion that he had verified the warrant against Ann Miller as active.
 {¶ 6} An appellate court's review of summary judgment is conducted de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,711. We apply the same standard as the trial court and conduct an independent review without deference to the trial court's determination.Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107,Brown, at 711. We must affirm the trial court's judgment if any of the grounds the movant raised in the trial court support the judgment.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 7} Summary judgment is appropriate only where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, *Page 4 
reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66. A party seeking summary judgment "bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which * * * demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996),75 Ohio St.3d 280, 292. All doubts or conflicts in the evidence must be construed most strongly in favor of the party against whom the judgment is sought. Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45.
 {¶ 8} For ease of discussion, we first address plaintiff's second assignment of error.
I. Second Assignment of Error {¶ 9} Plaintiff's second assignment of error charges the trial court erred in concluding Crime Stoppers acted in "good faith" in passing on to the Columbus Dispatch for publication the information Milner provided. The trial court, however, determined that because plaintiff failed to submit any evidence raising a genuine question of whether Crime Stoppers acted in anything but good faith in providing plaintiff's name to the newspaper, plaintiff failed to establish the requisite degree of fault required for a successful defamation claim.
 {¶ 10} Defamation, which includes both libel and slander, is a false publication that causes injury to a person's reputation, either exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade of business. Roe exrel. Roe v. Heap, Franklin App. No. 03AP-586, 2004-Ohio-2504, at ¶ 18, citing Sweitzer v. Outlet Communications, Inc. (1999),133 Ohio App.3d 102, 108. *Page 5 
Slander refers to spoken defamatory words, while libel refers to written or printed defamatory words. Id., citing Mallory v. Ohio Univ. (Dec. 20, 2001), Franklin App. No. 01AP-278.
 {¶ 11} Actionable defamation falls into two categories: defamation per quod or defamation per se. Id., citing McCartney v. Oblates of St.Francis deSales (1992), 80 Ohio App.3d 345, 353; Mallory, supra. In defamation per quod, a publication is merely capable of being interpreted as defamatory, and the plaintiff must allege and prove damages. Dodley v. Budget Car Sales, Inc. (Apr. 20, 1999), Franklin App. No. 98AP-530.
 {¶ 12} To constitute defamation per se, the "words must be of such a nature that courts can presume as a matter of law that they tend to degrade or disgrace the person of whom they are written or spoken, or hold him up to public hatred, contempt or scorn." Moore v. P.W.Publishing Co. (1965), 3 Ohio St.2d 183, 188, certiorari denied (1966),382 U.S. 978. When a statement is defamation per se, both damages and actual malice are presumed to exist. Dodley, supra, citing Westropp v.E.W. Scripps Co. (1947), 148 Ohio St. 365, paragraph four of the syllabus; King v. Bogner (1993), 88 Ohio App.3d 564, 567-568;McCartney, supra. Whether a statement is defamation per se is a question of law that an appellate court properly may determine de novo.Becker v. Toulmin (1956), 165 Ohio St. 549, 554; DeMuesy v.Haimbaugh (Dec. 31, 1991), Franklin App. No. 91AP-212; Sethi v. WFMJTelevision, Inc. (1999), 134 Ohio App.3d 796, 804.
 {¶ 13} A defamatory statement also must be examined in the context of privilege. McCartney, supra, at 353, citing McCarthy v. CincinnatiEnquirer, Inc. (1956), 101 Ohio App. 297. A privileged communication is one that, except for the occasion on which or the circumstances under which it is made, would be defamatory and actionable. Costanzo v. *Page 6 Gaul (1980), 62 Ohio St.2d 106, 108. While the publication of the dismissed warrant for plaintiff's arrest arguably is defamatory per se, actual malice will not be presumed if a qualified privilege applies.Hahn v. Kotten (1975), 43 Ohio St.2d 237, 244. Instead, the burden falls upon plaintiff to prove actual malice.
 {¶ 14} The qualified privilege thus "does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, and makes a showing of falsity and actual malice essential to the right of recovery."Hahn, supra, at 244. As a result, when a defendant possesses a qualified privilege regarding statements in a published communication, the privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice. Jacobs v. Frank (1991),60 Ohio St.3d 111, at paragraph two of the syllabus. In a case involving qualified privilege, "actual malice" is defined as acting with knowledge that the statements are false or with reckless disregard as to their truth or falsity. Id.
 {¶ 15} The qualified privilege is "deeply rooted in public policy."A B-Abell Elevator Co. v. Columbus/Central Ohio Bldg. Constr. TradesCouncil (1995), 73 Ohio St.3d 1, 8. "It applies in a variety of situations where society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection." Id. The qualified privilege arises when existing circumstances cast on the defendant the duty to make a communication to a certain other person. Alternatively, it arises where the defendant is so situated that, in the interests of society, the defendant rightly should in good faith tell third persons certain facts. Hahn, supra, at 245-246. *Page 7 
 {¶ 16} A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty. Id. at 246. The privilege arises even though the statement contains matter that, without the privilege, would be actionable. Moreover, the privilege applies even if the duty is not a legal one, but only a moral or social duty of imperfect obligation. Id. Thus, to establish a qualified privilege defense, the defendant must show that (1) the publication was made in good faith, (2) an interest existed to be upheld, (3) the publication was limited in scope to that interest, (4) the publication was made on a proper occasion, and (5) the publication was done in a proper manner and to the proper parties. Id. at 244.
 {¶ 17} The "public interest" is one of the interests included within the privilege. A B-Abell, supra, at 9. Ohio courts, however, have not limited the public interest qualified privilege to the communications of public organizations. See, e.g., Thompson v. Webb (1999),136 Ohio App.3d 79, 84. Thompson applied the qualified privilege to statements of the president of the Cincinnati chapter of the National Organization for Women ("NOW"). As part of the chapter's educational program to raise public awareness about obstacles abused women and children face during domestic relations proceedings, the chapter president made comments to the press after a woman was ordered to extend visitation rights to her child's father who attacked the woman during a previous visit. The father sued for defamation, but the appellate court affirmed the trial court's summary judgment in favor of NOW and its president, as the statements were made on a proper occasion, in a proper manner, and to the proper parties. See, also, Patio World v. Better Business Bureau,Inc. (1989), 43 Ohio App.3d 6 (applying the qualified privilege to the *Page 8 
Better Business Bureau for its release of information to the public in order to promote the public interest of protecting consumers).
 {¶ 18} Crime Stoppers similarly is entitled to a qualified privilege for its release of information to the public. Plaintiff presented no evidence Crime Stoppers lacked good faith in publishing the "Most Wanted" list, and nothing in the record indicates an improper purpose motivated Crime Stoppers to release the information. Crime Stoppers possessed a proper interest anchored in its desire to assist the police in reducing crime. The publication was limited to that interest and was made on a proper occasion in the manner designed to serve that interest.
 {¶ 19} Moreover, publication of the information was limited to the parties who could facilitate that interest. Indeed, aside from the publication in the Columbus Dispatch, Crime Stoppers took no other steps to convey information about plaintiff to anyone else. While the publication reached a large number of people, such publication was necessary to achieve the public interest Crime Stoppers served.
 {¶ 20} Because all of the Hahn factors for the qualified privilege defense are satisfied, Crime Stoppers is entitled to the defense. The burden then fell to plaintiff to present evidence that in forwarding the information about plaintiff to the newspaper, Crime Stoppers acted with actual malice: either actual knowledge of the statement's falsity or reckless disregard as to its truth or falsity. In an attempt to meet her burden, plaintiff contends all the evidence reflects Crime Stoppers did nothing other than rely on Milner to verify the validity of the information it published about her.
 {¶ 21} While plaintiff's contention about the evidence of record is correct, Crime Stoppers' relying upon a uniformed police officer to check the validity of warrants that his *Page 9 
own department issued does not constitute reckless disregard in the absence of any evidence such reliance might be misplaced. Without evidence the alleged defamer entertained serious doubts about the statements in question, a failure to investigate will not defeat a qualified privilege. Thompson, supra, at 85, citing A B-Abell, supra. Had plaintiff pointed to other similar situations where police officers erred in verifying the validity of warrants, her argument that a genuine issue of fact exists concerning actual malice would be stronger. Absent such evidence, summary judgment in favor of Crime Stoppers was appropriate. Plaintiff's second assignment of error is overruled.
II. First Assignment of Error {¶ 22} Plaintiff's first assignment of error addresses the City's and Milner's liability for the steps Milner took, or failed to take, to verify the validity of the warrant before sending the information to Crime Stoppers. While acknowledging the immunity of the City and its public employees under R.C. Chapter 2744, plaintiff contends the trial court should have concluded Milner's actions fall outside the immunity afforded him. Plaintiff asserts the trial court reached the wrong conclusion because it accepted as "absolutely true" the version of the facts the City and Milner presented when it should have drawn a "reasonable inference" that Milner "assumed that the warrant was valid and simply did not call to verify it." (Plaintiff's brief, 17.)
 {¶ 23} The Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, created a three-tiered analysis for determining whether a political subdivision is immune from liability. R.C. 2744.02(A) initially sets forth the general rule that political subdivisions are immune from liability "for any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary *Page 10 
function" unless an exception applies. As relevant here, the definition of "governmental function" found in R.C. 2744.01(C)(1) includes functions "for the common good of all citizens of the state" and activities promoting or preserving the public peace not engaged in or not customarily engaged in by nongovernmental persons.
 {¶ 24} The immunity afforded a political subdivision in R.C.2744.02(A)(1) is not absolute. Rather, once immunity is established under R.C. 2744.02(A)(1), the second tier of analysis examines whether any of five listed exceptions apply. Cater v. Cleveland (1998),83 Ohio St.3d 24, 28. Thus, a political subdivision generally may be liable for an employee's negligent operation of a motor vehicle, negligent performance of proprietary function, negligent failure to maintain public roads, negligent maintenance of governmental buildings and grounds, and any liability the Revised Code expressly imposes. See R.C.2744.02(B). Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision successfully demonstrates that one of the defenses contained in R.C. 2744.03 applies. Id.
 {¶ 25} Milner's action here involved compiling outstanding arrest warrants for the purpose of informing the public that law enforcement agencies were searching for certain individuals. His sending that information to Crime Stoppers falls under the umbrella of a governmental function as defined in R.C. 2744.01(C)(1) because Milner's actions were designed to promote the common good and to preserve the public peace, and they are not a function in which nongovernmental actors customarily engage. Under R.C. 2744.02(A)(1) the City is immune for Milner's actions unless plaintiff can demonstrate that any of the R.C. 2744.02(B) exceptions apply. Because plaintiff failed to show Milner's *Page 11 
actions fall within any of the five exceptions to immunity provided in R.C. 2744.02(B), the City retains its immunity in this case, as plaintiff properly conceded at oral argument.
 {¶ 26} R.C. 2744.03(A)(6) addresses employee liability and provides that an employee of a political subdivision is immune from liability unless one of three exceptions applies. The exceptions include acts or omissions manifestly outside the scope of the employee's job duties, acts or omissions committed with "malicious purpose, in bad faith, or in a wanton or reckless manner," or actions for which the Revised Code expressly imposes civil liability. The only potentially applicable exception here is R.C. 2744.03(A)(6)(b), around which plaintiff centers her argument. It imposes liability upon a government employee when the employee's acts or omissions were committed with "malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(6)(b). Plaintiff does not assert Milner acted maliciously or in bad faith; rather she contends the evidence allows a reasonable inference that Milner acted wantonly or recklessly.
 {¶ 27} For purposes of R.C. 2744.03(A)(6)(b), "recklessness" is a "perverse disregard of a known risk." Byrd v. Kirby, Franklin App. No. 04AP-451, 2005-Ohio-1261, at ¶ 27, citing Lipscomb v. Lewis (1993),85 Ohio App.3d 97, 102. The standard suggests something more than simple carelessness is necessary to prove recklessness. Id., citing Poe v.Hamilton (1990), 56 Ohio App.3d 137, 138. Instead, the actor must be aware his or her conduct will probably result in injury. Shadoan v.Summit Cty. Children Serv. Bd., Summit App. No. 21486, 2003-Ohio-5775. See, also, Workman v. Franklin Cty. (Aug. 28, 2001), Franklin App. No. 00AP-1449. "Wanton" misconduct is a failure to exercise any *Page 12 
care whatsoever. Alley v. Bettencourt (1999), 134 Ohio App.3d 303, 315, citing Fabrey v. McDonald Village Police Dept. (1994),70 Ohio St.3d 351, 356.
 {¶ 28} Plaintiff alleges Milner acted wantonly or recklessly when he did not verify the continuing validity of the warrant against her. According to plaintiff, "[d]espite Milner's self-serving testimony that he did call to verify the warrant, there is absolutely no evidence that he did and there is every indication that he did not." (Plaintiff's brief, 18.) Plaintiff, however, offers no evidence of her own to support her contention.
 {¶ 29} Milner presented an affidavit that stated he obtained the warrant from a location in the police division that generally held valid warrants. According to the affidavit, Milner called the office of the municipal clerk of court and spoke with an individual who left the telephone briefly, returned and advised Milner the warrant for plaintiff's arrest remained active. Milner then forwarded the information to Crime Stoppers for publication.
 {¶ 30} In response, plaintiff presented evidence from the clerk's office that there previously had never been a problem with verifying the validity of an arrest warrant for Crime Stoppers, and that typically one of three employees responds to such calls. Milner himself stated that he could recognize the voices of two of the three regular file room clerks, and neither had verified plaintiff's warrant. There was no evidence suggesting that the third file room clerk could verify Milner's call. The evidence, however, also revealed more than three employees of the clerk's office handle such calls. With that additional piece of evidence, plaintiff's evidence fails to support the inference that Milner published the information without calling the clerk's office to determine if the warrant remained valid. Indeed, to reach that conclusion on the evidence presented would require more than drawing all inferences in plaintiff's favor; such a conclusion would require we speculate *Page 13 
that, even though plaintiff cannot account for all the employees Milner may have spoken with, all would state they did not check for Milner on the validity of plaintiff's arrest warrant.
 {¶ 31} Moreover, even if the trial court accepted plaintiff's speculation that Milner failed to call to verify the accuracy of the warrant due to a heavy workload and an impending deadline for the "Most Wanted" list, such an interpretation of the submitted evidence warrants only the conclusion that Milner was negligent, not wanton or reckless. To show wanton or reckless conduct, plaintiff needed to present evidence Milner knew the warrants in the police department's files likely were inaccurate. No such evidence exists in the record, and in its absence, plaintiff failed to show the R.C. 2744.03(A)(6)(b) exception applies here. Plaintiff's first assignment of error is overruled.
 {¶ 32} Having overruled plaintiff's two assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 KLATT and TYACK, JJ., concur. *Page 1