782 F.2d 1042
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 STEPHEW W. KERLIN, THOMAS KLOMP, ROBERT SRADEJA, Plaintiff-Appellees,
v.
SHARON ZAHN, ET AL., Defendants,
GERALD W. ICE, individually and as Associate Principal of
Whitmer H.S. (85- 3161), JAMES CRAU, individually
and as Supervisor (85-3162), Defendants-
Appellants.
 
 85-3161, 85-3162
 United States Court of Appeals, Sixth Circuit.
 12/2/85
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: JONES and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a second appeal of a case that was remanded for further proceedings in an order of this court filed in 1983. See Kerlin v. Zahn, Nos. 81-3576/3594/ 3610/3611 (6th Cir. 1983). The issues upon which remand was ordered involved a pendant state claim of libel. This court held that the district court had not sufficiently dealt with the question whether one defendant, Gerald Ice, had committed an act of publication. Further, this court held, the district judge did not explicitly find that both Ice and another defendant, James Grau, had acted with actual malice as required by Ohio law, since the defamation involved the parties' mutual employment. Without taking additional evidence, the court below made cursory further findings and conclusions and reaffirmed its judgment for plaintiffs. Because we hold these findings to be legally insufficient, we reverse.
 
 
 2
 The claim arose out of events leading to the dismissal of the plaintiffs from their non-tenured teaching positions. Plaintiffs Kerlin, Klomp and Sradeja were instructors in the Washington Local School District vocational education program, designated OWE-OWA. James Grau was supervisor of OWE-OWA. Gerald Ice was an associate principal of the school at which the program was located. Kerlin, Klomp and Sradeja were organizers of a teachers' union that was the rival of another union of which both Grau and Ice had been president. Not a defendant, but involved in the defendants' acts, was Edison Barney, the principal of the school.
 
 
 3
 In its previous opinion in this case, this court described the pertinent events as follows:
 
 
 4
 'The district court found, as a matter of fact, that certain cliques developed in the faculty-administration-board relationship and that certain personal conflicts, to the point of severe animosity, developed between the plaintiffs and certain of the defendants. It is apparent that the line indicating the existence of these animosities approaches that indicating the TAWLS/WFT [the rival unions] membership distinction.
 
 
 5
 'Following the July 1976 appointment of Ice as the associate principal of the vocational building and a September 1976 appointment of Grau as supervisor of the OWE/OWA program, Kerlin apparently requested a transfer out of the department, expressing fears regarding Grau's attitude toward him. That request was never acted upon.
 
 
 6
 'Grau began an inquiry into the performance of his OWE/OWA staff on February 15, 1977. Pursuant to that inquiry, Grau prepared a memorandum on March 11, 1977 in which he accused the plaintiffs of dishonesty and asserted that their performance was unprofessional. The district court found that the accusations against the plaintiffs were false. The memorandum also contained statements regarding the desirability of discontinuing the plaintiffs' employment. Grau sent this memorandum to both Ice and Barney. Additional copies were placed in the personnel files of each of the plaintiffs, without their knowledge. Grau also prepared evaluations for the plaintiffs after conducting classroom observations, all of which included recommendations for nonrenewal.
 
 
 7
 'Board policy number 4117 provides for the use of a 'professional growth profile' which permits teacher evaluations with the aim of improving efficiency and competence. The district court found that Grau had failed to comply with several of the requirements of that policy when making his evaluations: (1) he provided no conference with any of the plaintiffs concerning the evaluations; (2) he did not provide any of the plaintiffs with a rough draft of the evaluation prior to a conference; (3) he did not sign any of the evaluations prior to their submission; (4) he did not present any of the plaintiffs with the final evaluations for their signatures; (5) he did not inform any of the plaintiffs of the existence of the documents, thus precluding them from being able to rebut any of the statements made therein. The district court also noted that Grau's actions were in direct violation of board policy 4113.2, which provides that no forms are to be placed in the personnel files of a teacher which reflect upon his performance without that teacher being informed of their existence.
 
 
 8
 'Barney and Ice also began having a series of individual meetings with the OWE/OWA coordinators. Though the meetings were represented as an attempt to get an overview of the entire program, the district court found that the meetings were actually held for the purpose of conducting an undisclosed evaluation of each individual's performance. As a result of these meetings and Grau's letter, Barney issued a series of 'jeopardy sheets' listing certain of the plaintiffs' asserted deficiencies. The jeopardy sheets were issued on March 15, 1977 and on April 18 of that same year, Barney delivered recommendation sheets to all three plaintiffs indicating his recommendation for their nonrenewal, purportedly based on their failure to comply with the jeopardy sheets. The district court specifically found that the allegations in the jeopardy sheets were false and/or inaccurate and that Grau, Ice and Barney were aware of those inaccuracies.
 
 
 9
 'Pursuant to a nonrenewal policy adopted on March 3, 1977, the board, and only the board, is vested with the authority to not renew any teacher on a limited contract merely by providing notice of nonrenewal to that teacher prior to April 30. All jeopardy sheets, evaluations, and recommendations, including those which did not comply with board policy, were given to the board for consideration in their 1977 contract renewal determinations. On April 21, 1977, the board met and unanimously voted not to renew the contracts of the three plaintiffs.' Kerlin, slip op. at 3-5.
 
 
 10
 In its original ruling, the district court specifically concluded that Grau had committed libel per se in the writing and publication of the March 11, 1977 memorandum. It held both Grau and Ice liable for defamation, however, without indicating what specific acts of publication by Ice gave rise to that liability. Further, the court made no reference to the existence of actual malice on the part of either defendant. This court held that a finding of actual malice was 'arguably supportable from the record' but that a remand was necessary to allow the district court to address the issue. Id. at 11. We further directed the court to consider whether Ice had committed any act that constituted publication. Id. at 12.
 
 
 11
 On remand the district court incorporated the statement of facts quoted above from the opinion of this court and stated that this 'set out in detail the facts upon which [the district court] found liability for defamation and slander.' Kerlin v. Zahn, No. C 77-314, memo. op. at 2 (N.D. Ohio 1985). The district court then found as additional facts:
 
 
 12
 that placing derogatory material in plaintiff's [sic] file without required notice to plaintiff's [sic] constituted acts of actual malice on the part of defendant Grau with the full knowledge of defendant Ice. These acts, intended to influence Board action, constitute sufficient publishing on the part of the defendants' [sic] and constitute acts of actual malice . . ..
 
 
 13
 Id.
 
 
 14
 * Appellant Ice first asserts that the district court erred in concluding that he committed an act of publication. It is apparent from the district court's opinion that the only basis for such a conclusion was the finding that Ice had 'full knowledge' of the activities of Grau. Therefore, Ice is liable only if this is sufficient culpability to constitute publication under Ohio law.
 
 
 15
 Ohio law is sparse on this question. Ohio Jurisprudence 3d states, 'Publication must have been made by the defendant either directly or through the agency of some other person authorized to act for him.' 35 Ohio Jur. 3d 490-91, Defamation and Privacy Sec. 50 (1982). No Ohio cases are cited for this point, however; it is simply a statement of the general rule. In Scott v. Hull, 22 Ohio App. 2d 141, 259 N.E.2d 160 (1970), an Ohio appeals court considered whether publication exists when a defamatory statement is written by an unknown person on the exterior wall of a building owned by defendant and is not thereafter removed by defendant. The court held the defendant no liable, stating that:
 
 
 16
 liability to respond in damages for the publication of a libel must be predicated on a positive act, on something done by the person sought to be charged, malfeasance in the case of an intentional defamatory publication . . .. Nonfeasance, on the other hand, is not a predicate for liability.
 
 
 17
 22 Ohio App. 2d at 144. The Ohio court quoted in support the following passage from 53 Corpus Juris Secundum 231, Libel and Slander Sec. 148 (1948):
 
 
 18
 As a general rule, all persons who cause or participate in the publication . . . are responsible. . . . Hence, one who requests, procures, or aids and abets, another to publish defamatory matter is liable as well as the publisher.
 
 
 19
 22 Ohio App. 2d at 144. We conclude that Ohio law would require the finding of some positive act by Ice in order to find that he made a libelous publication. A finding of knowledge of the acts of another is insufficient to support liability and the judgment against Ice must be reversed.
 
 
 20
 Defendant Grau asserts that the judgment against him should be reversed as well because the district court erred in concluding that he had acted with actual malice, a factor necessary to overcome the qualified privilege Grau enjoys in this situation.
 
 
 21
 At the outset it should be noted that there seems to be some confusion in Ohio law as to the definition of actual malice. The issue first arose, apparently, in Hahn v. Kotten, 43 Ohio St. 2d 237 (1975), in a case, like this one, involving a qualified privilege defense to libel. Syllabus number 2 of that case reads:
 
 
 22
 A qualified privilege protecting the making of defamatory statements is exceeded when the statements are made with "actual malice", that is, with knowledge that the statements are false or with reckless disregard of whether they were false or not. (New York Times Co. v. Sullivan, 376 U.S. 254, followed.)
 
 
 23
 This definition is, of course, the one set forth in the landmark Sullivan case cited. See 376 U.S. at 280. The syllabus in Ohio Supreme Court opinions is the official statement of the law. Ohio S.C.Rep.R. 1(B); Howland v. Sears, Roebuck & Co., 438 F.2d 725, 729 n.2 (6th Cir. 1971). Nonetheless, the text of that and subsequent cases refer to and apply a standard of "ill will, spite, grudge or some ulterior motive." See Hahn, 43 Ohio St. 2d at 248; Evely v. Carlon Co., 4 Ohio St. 3d 163, 166 (1983); cf. Fawcett v. Murphy Co., 46 Ohio St. 2d 245 (1976). This "ill will" standard, which focuses on the defendant's attitude or motive, is commonly refered to as "common-law malice" and is something quite different than what is signified by the term of art "actual malice." See Cantrell v. Forest City Publishing Co., 419 U.S. 245, 251-52 (1974). Consequently, it is difficult to determine precisely what standard Ohio law requires.
 
 
 24
 Nevertheless, there are not sufficient findings in the record to support the conclusion of actual malice under either standard. In its second ruling, the district court relied only on the fact that the materials were placed in the plaintiffs' files in a manner contrary to the written policies of the Board of Education. The court did not find or rely upon a finding that Grau knew or should have known that the information was false. Neither did it find or rely upon a finding of ill will or spite. Finally, and without meaning to imply that this would be sufficient, the court did not find that Grau had knowingly or intentionally defied Board policy.
 
 
 25
 From the fact that the district court, even on remand, failed to make findings that would support a conclusion of actual malice, we can only conclude that such findings would not have been supported by the evidence. According the judgment against Grau must also be reversed.
 
 
 26
 Defendants ask us to rule on the district court's statement on remand that the issue of attorneys' fees could next be addressed. Defendants assert that under Ohio law an award of attorneys' fees can only be made as part of a general damage award and not separately. A trial court's statement that it is going to consider attorneys' fees is unappealable until an award is actually made. See Mekdeci v. Merrell National Laboratories, 711 F.2d 1510, 1523 (11th Cir. 1983). In any event, our disposition of this case makes the requested ruling unnecessary
 
 
 27
 The judgment of the district court against both defendant's Grau and Ice is REVERSED.