This is an appeal from the judgment of the Scioto County Court of Common Pleas, which granted summary judgment in favor of Defendant-Appellee Hughie Blair in both his official and individual capacities, as well as Defendant-Appellee Frank Edward Ciraso, Jr., in his official capacity only. For the reasons hereinafter stated, we affirm the judgment of the trial court.
On November 7, 1997, Plaintiff-Appellant A. Mark Darby filed a complaint in the Scioto County Court of Common Pleas against numerous defendants, including Blair and Ciraso in both their individual and official capacities.[1] Darby, the bailiff and chief probation officer for the Scioto County Court of Common Pleas, made various allegations against each defendant individually. The complaint further alleged that all of the defendants had committed acts constituting tortious interference with Darby's contractual relationships, malicious prosecution, and intentional infliction of emotional distress upon him.
Regarding the individual allegations, the complaint alleged that Blair had conspired with Ciraso to defame Darby. The complaint also accused Blair of personally making defamatory statements about Darby to John Welton, another defendant in the case. In addition, the complaint alleged that Blair had utilized his position as chief deputy of the Scioto County Sheriff's Office to defame Darby, specifically by investigating baseless charges and accusations allegedly brought by Welton.
The complaint made similar claims against Ciraso, alleging that he had conspired with the other defendants to defame Darby. The complaint accused Ciraso of using his position as the investigations supervisor for the Scioto County Child Support Enforcement Agency [hereinafter CSEA] to defame Darby. Specifically, Ciraso allegedly offered to assist various individuals in resolving their child support problems in exchange for negative information about Darby. In addition, the complaint alleged that Ciraso used his official position and conspired with other defendants to lodge false robbery charges against Darby, and to assist Blair in pursuing Welton's complaint.
The complaint further alleged that Ciraso had defamed Darby in a series of letters and articles in the Shawnee Sentinel newspaper. Between October 1996 and November 1997, Ciraso wrote a series of articles in theSentinel in which he raised allegations of wrongdoing by various government officials in Scioto County, including Darby. On at least two occasions, the Sentinel noted that Ciraso was the investigation supervisor for the CSEA. Darby claims that Ciraso's letters libeled him and that Ciraso acted in his official capacity by identifying his position with the CSEA in these letters.
Blair and Ciraso filed answers to appellant's complaint asserting as defenses that, inter alia, any allegedly defamatory statements were true, and that such statements were protected by a qualified privilege. After the parties conducted discovery, Blair and Ciraso filed motions for summary judgment in both their official and individual capacities. Ciraso filed his motion on April 14, 1999, and Blair filed his motion on April 15, 1999.
In his motion for summary judgment, Blair argued that Darby's claims against him were limited to two incidents involving Defendant John Welton. The first incident occurred when Welton came to the Scioto County Sheriff's Office and accused Darby of threatening him. The second incident was Blair's investigation of Welton's complaint. Darby admitted at his deposition that these were the only two incidents of which he was aware that involved Blair. Blair argued that he was entitled to sovereign immunity pursuant to R.C. Chapter 2744, and that any statements he made to Welton were either true, or were protected by a qualified privilege. In addition, Blair argued that Darby is a public official for purposes of defamation, and that he could not prove that Blair acted with actual malice. Finally, Blair argued that he conducted a proper investigation, which did not establish any wrongdoing on Darby's part.
On May 11, 1999, Darby filed memoranda opposing both Blair and Ciraso's motions for summary judgment. In response to Blair's motion, Darby argued that summary judgment was improper because Blair had admitted to making statements that were defamatory per se.
Blair testified at his deposition that Welton filed a complaint with the Scioto County Sheriff's Office alleging that Darby had threatened Welton. According to Blair, Welton was very upset and asked what the Sheriff's Office would do to protect him if Darby tried to kill him. Blair told Welton that it was possible Darby was capable of doing something violent, but that the Sheriff's Office did not have the resources to baby-sit Welton. According to Darby, telling Welton, a convicted felon, that Darby, the chief probation officer in the county, might be capable of violence constitutes slander per se. Darby argues that there was no reason for Blair to make such a statement.
Darby also submitted the affidavit of Sergeant M. Shawn Davis, a deputy sheriff who was formerly assigned as a guard at the Scioto County Jail. Davis alleged that, sometime between August and October 1997, Blair ordered him to allow Ciraso and a reporter from the Sentinel to interview Randy Callihan, an inmate at the jail. Ciraso refers to this interview in several of his letters to the Sentinel. Darby argues that the Davis affidavit establishes that Blair and Ciraso had conspired to defame Darby.
Ciraso's motion for summary judgment argued, inter alia, that Darby had no proof that Ciraso was acting in his official capacity when he made any of the allegedly defamatory statements. Darby testified at his deposition that he believed Ciraso acted in his official capacity when he wrote his letters to the Sentinel because two of the Sentinel issues identified Ciraso as the investigation supervisor for the CSEA. However, several defendants, including Ciraso, testified that Ciraso had signed the letters as an individual, and the Sentinel staff had added his position with the CSEA to the letters without Ciraso's knowledge or consent. In addition, when Ciraso realized that the Sentinel had identified his official position, he directed the newspaper staff to refrain from so identifying him in the future.
In his memorandum in opposition to Ciraso's motion for summary judgment, Darby claimed that evidence apart from the letters to theSentinel established that Ciraso had used his official capacity to defame Darby. Specifically, Darby claimed that Ciraso had threatened Evelyn Rase with prosecution if she did not remember that she had previously accused Darby of dealing in drugs. Darby also testified at his deposition that several individuals had contacted him, claiming that Ciraso had offered to assist them with their child support problems in exchange for negative information on Darby.
On May 20, 1999, Darby filed a supplemental "affidavit" from Jeffrey Frost to support his claim that Ciraso had offered to assist various individuals with their child support problems in exchange for information on Darby. Mr. Frost's "affidavit" alleged that Ciraso had offered to reduce his child support payments in exchange for "dirt" on Darby. This purported affidavit is handwritten, signed by Mr. Frost, and is notarized. However, there is no indication that Mr. Frost made the affidavit under oath.
On May 27, 1999, the trial court filed an entry finding that Darby is a public official for purposes of his defamation claims, and that the test for defamation against a public official set forth in New York Times v.Sullivan (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, is applicable in the instant case. On that same day, the trial court issued its judgment entries on both the Blair and Ciraso motions for summary judgment. The court granted summary judgment in favor of Blair in both his official and individual capacities. The court also granted summary judgment in favor of Ciraso, but only in his official capacity, not in his individual capacity. The trial court declared both judgment entries final orders, finding that its decisions affected substantial rights of Darby, and that there was no just reason for delay.
Darby filed a timely notice of appeal and presents two assignments of error for our review.
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE THERE IS A QUESTION OF INTENT AND MOTIVE BASED UPON UNDISPUTED FACTS.
 ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED IN MAKING DETERMINATIONS OF ISSUES OF FACT IN RULING ON SUMMARY JUDGMENT.
 OPINION I.
As a preliminary matter, we shall discuss our standard of review and the law applicable to defamation claims in cases such as this. We first note that the trial court granted summary judgment in favor of Blair in both his individual and official capacities, while it granted Ciraso summary judgment in his official capacity only. The court thus implicitly found that genuine issues of material fact exist regarding whether or not Ciraso defamed Darby, but that no such issues exist regarding Blair. As a result, our analysis of Darby's arguments with respect to each appellee will necessarily be somewhat different.
On an appeal from the grant of a motion for summary judgment, we conduct a de novo review of the motion, applying the same standards as the trial court. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 614 N.E.2d 765. Summary judgment is appropriate when there is no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Civ.R. 56 (C). The party moving for summary judgment has the initial burden of identifying evidence in the record establishing that there are no genuine issues of material fact to be litigated. Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. If the moving party satisfies this initial burden, then the burden shifts to the non-moving party to present evidence that genuine issues of material fact exist. Id.
In the instant case, Darby contends that the trial court erred in granting summary judgment on his defamation claims against Blair and Ciraso. Defamation requires an unprivileged publication to a third party of a false and defamatory statement about another. McCartney v. Oblatesof St. Francis De Sales (1992), 80 Ohio App.3d 345, 609 N.E.2d 216. A statement is defamatory if it tends to injure one's reputation, exposes an individual to public hatred, contempt, ridicule, shame or disgrace, or adversely affects the individual's business or occupation. Early v. TheToledo Blade (1998), 130 Ohio App.3d 302, 720 N.E.2d 107.
Defamation may be per se or per quod. Defamation per se means that the defamation "is accomplished by the very words spoken." McCartney at 353,609 N.E.2d at 222. Defamation per quod means that a statement with an apparently innocent meaning becomes defamatory through interpretation or innuendo. Id. In order for a statement to be defamatory per se, it must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation." Id. With defamation per se, damages and actual malice are presumed. With defamation per quod, the plaintiff must plead and prove special damages resulting from the defamatory statements.
The plaintiff in a defamation case must also prove that the defamatory statement was made with some degree of fault. In the instant case, the trial court found that Darby is a public official, a finding that Darby does not challenge on appeal. As a public official, Darby must prove that the appellees acted with actual malice to prevail on his defamation claims against them. New York Times, supra. Actual malice means that the defendant knew that a defamatory statement was false, or acted with reckless disregard as to the truth or falsity of the statement. Id.
It is an affirmative defense in a defamation action that an allegedly defamatory statement was protected by a qualified privilege. Hahn v.Kotten (1975), 43 Ohio St.2d 237, 331 N.E.2d 713. A qualified privilege exists "where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect and further it." Id. at 244, 331 N.E.2d at 718. The privilege is not limited to specific categories of individuals or statements, but rather applies broadly when a defendant speaks "in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." Id. quoting Prosser, Law of Torts (4 Ed.) 789, Section 115 (3). Since the privilege is qualified rather than absolute, the defendant must make the statement in a reasonable manner and for a proper purpose." Id. at 243,331 N.E.2d at 718. A qualified privilege does not apply if the defendant makes a defamatory statement with actual malice. Id. at paragraph two of the syllabus.
 II.
In his First Assignment of Error, Darby argues that, in granting summary judgment, the trial court necessarily resolved disputed issues of material fact regarding the intent and motive with which Blair and Ciraso made their allegedly defamatory statements. Darby argues that an actor's state of mind must normally be inferred from his actions, so summary judgment is often inappropriate in cases involving questions of motive and intent. See, e.g.,Tragler v. Rondy, Inc., (Dec. 20, 1994), C.A.6 No. 93-4358, 1994 U.S. App. LEXIS 36239, unreported. Darby contends that the record contains more than enough evidence that Blair and Ciraso acted with malice towards him. Thus, appellant argues that the trial court erred in granting summary judgment in their favor.
Darby's argument under the First Assignment of Error is irrelevant to his claims against Ciraso. As a public official, Darby cannot prevail on his defamation claim unless he establishes that Ciraso acted with actual malice. In the instant appeal, however, the only issue for our consideration with respect to Ciraso is whether or not he made any potentially defamatory statements while acting in his official capacity. If Ciraso made a statement in his individual capacity, that statement would not be transformed into an official act merely because Ciraso knew it to be false. Accordingly, Darby's First Assignment of Error with respect to Ciraso is OVERRULED.
Turning to Darby's claim against Blair, Darby contends that summary judgment is normally inappropriate in cases where the defendant's motive and intent are an issue. Darby cites a number of employment discrimination cases that noted the difficulties inherent in granting summary judgment in cases involving issues of motive and intent. See, e.g., Tragler, supra; Thornbrough v. Columbus Greenville R.R. (C.A.5, 1985), 760 F.2d 633. Although in many of these cases the court found that summary judgment was appropriate, Darby contends that in the instant case there is more than sufficient evidence from which to infer that Blair acted with a malicious motive. He argues that the trial court erred by failing to construe the evidence of malice in favor of Darby, the nonmoving party. We disagree.
The employment discrimination cases cited by Darby are not dispositive of, nor even applicable to, the instant case, because intent and motive are not elements of defamation. In the context of a defamation action involving a public official, actual malice "may not be inferred from evidence of personal spite, ill will, or deliberate intention to injure, as the defendant's motives for publishing are irrelevant." Varanese v.Gall (1988), 35 Ohio St.3d 78, 518 N.E.2d 1177, paragraph one of the syllabus. Rather, in such cases the term "actual malice" refers to the defendant's knowledge that a statement was false, or recklessness as to the truth or falsity of the statement. Id. The same actual malice standard applies when the defendant asserts a defense of qualified privilege. Jacobs v. Frank (1991), 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus.
In addition to misstating the standard for actual malice in public official defamation cases, appellant also misconstrues the court's role in applying that standard. The concept of actual malice is an issue of constitutional dimensions in public official defamation cases. BoseCorp. v. Consumers Union of U.S., Inc. (1984), 466 U.S. 485,104 S.Ct. 1949, 80 L.Ed.2d 502. Appellate courts have a duty to conduct an independent review of the actual malice issue to guard against infringement of First Amendment rights. Varanese, 35 Ohio St.3d at 80,518 N.E.2d at 1180-1181; Harte-Hanks Communications, Inc. v. Connaughton
(1989), 491 U.S. 657, 685, 109 S.Ct. 2678, 2694-2695, 105 L.Ed.2d 562,587. Summary judgment is an appropriate tool for weeding out meritless claims and preventing any chilling effect that the threat of defamation lawsuits might have on protected speech. Dupler v. Mansfield Journal Co.
(1980), 64 Ohio St.2d 116, 120, 413 N.E.2d 1187, 1191. Again, a similar rule applies in cases involving a qualified privilege. Jacobs, supra.
The trial court did not explain its decision to grant summary judgment in favor of Blair. Contrary to Darby's argument, however, it is not true that the court necessarily resolved disputed factual issues regarding Blair's motive and intent. Even if such issues exist, they are immaterial in a public official defamation case such as this. The only relevant issue regarding Blair's state of mind is whether he knowingly made false statements about Darby, or was reckless with respect to the truth or falsity of his statements. As a result, we find that there is no genuine issue of material fact concerning Blair's motive and intent in the casesub judice.
For the reasons stated above, Darby's First Assignment of Error is OVERRULED.
 III.
In his Second Assignment of Error, Darby argues that genuine issues of material fact exist concerning the elements of his defamation claims generally. With respect to Blair, Darby contends that the evidence establishes a prima case for slander per se. With respect to Ciraso, Darby contends that he presented evidence that Ciraso engaged in a pattern of abusing his position with the CSEA to coerce various individuals into making false accusations against Darby. Darby argues that the trier of fact should decide these issues and, therefore, the trial court erred in granting summary judgment.
In his motion for summary judgment, Blair argued that Darby's claims against him were limited to Blair's response to John Welton's complaint that Darby had threatened to kill Welton, and Blair's subsequent investigation of Welton's complaint. Darby testified at his deposition that these were the only two incidents involving Blair of which he was aware. Blair argued in his motion for summary judgment that statements made in his capacity as chief deputy, to a citizen filing a criminal complaint, are protected by a qualified privilege. In addition, Blair argued that any statements that he made to Welton were true and, therefore, not defamatory.
Nothing in the record before us indicates that there is any factual dispute surrounding Blair's conversation with Welton. Indeed, Darby's argument relies on Blair's deposition testimony concerning this conversation. Instead, Darby argues that the undisputed facts establish that Blair's statement to Welton, a convicted felon, that Darby, the county's chief probation officer, might be capable of violence constitutes slander per se. At a minimum, Darby argues that the trier of fact should determine whether or not Blair's comments to Welton were slander per se.
We find that Blair's statements to Welton were protected by a qualified privilege. Blair was justified in commenting on the possibility that Darby might harm Welton, because Blair was responding to Welton's apparent fear for his own safety. Hahn v. Kotten, 43 Ohio St.2d at 246,331 N.E.2d at 720. It cannot seriously be argued that law enforcement officials can afford to ignore threats such as those alleged by Welton, so Blair, as chief deputy, had a clear duty to treat Welton's complaint seriously. Blair's statement that Darby might be capable of carrying out his alleged threat did nothing more than assure Welton that his complaint would be taken seriously.
We now consider whether or not Blair acted with actual malice when he made his statement to Welton. Although Blair's statement to Welton was protected by a qualified privilege, Blair would lose that privilege if he knew his statement was false, or if he was reckless with regard to its truth or falsity. We note that Blair could not have known whether or not Welton's accusation was truthful, so he could not know whether or not Darby would attempt to harm Welton. One might conclude, as Darby argues, that without more information Blair should not have said anything at all. However, Blair was responding to Welton's accusations, and he had a clear duty to treat those accusations seriously. In carrying out that duty, it was not unreasonable for Blair to caution Welton that he too should treat the purported threat seriously. Given the fact that Blair's statement was framed in conditional language, and was in response to Welton's accusations, we find that Blair did not act with actual malice in making the statement.[2]
We now turn to Darby's argument to determine whether he has presented evidence raising genuine issues of material fact requiring litigation. Darby argues that his own affidavit, which he submitted with his memorandum opposing summary judgment, creates genuine issues of material fact concerning whether or not Blair and Ciraso conspired to defame him. Darby's affidavit, however, does nothing more than restate the allegations contained in the complaint. A party opposing summary judgment may not simply rely on unsupported allegations contained in the pleadings. Civ.R. 56 (E); Dresher v. Burt, 75 Ohio St.3d at 293,662 N.E.2d at 274.
Darby also submitted an affidavit from M. Shawn Davis, a deputy who worked at the Scioto County Jail. The thrust of this affidavit was that Blair ordered Davis to allow Ciraso and a reporter from the Sentinel to interview an inmate in the jail after normal business hours. Darby argues that the Davis affidavit creates an issue as to whether or not Blair conspired with Ciraso to defame him. We disagree.
We first note that the original Davis affidavit is not in the trial court record. The document attached to Darby's memorandum opposing summary judgment appears to be a faxed copy of a purported affidavit by Davis. There is nothing in the record to certify that the Davis affidavit is a true and accurate copy of the original. Thus, it is questionable whether the trial court could even consider the Davis affidavit in ruling on Blair's motion for summary judgment.
Even if we were to accept the Davis affidavit as valid, however, our review of the affidavit does not convince us that there is any genuine issue of fact for trial. We recognize that we must construe all evidence and draw all reasonable inferences most strongly in favor of the party opposing summary judgment. However, the Davis affidavit does not establish that Blair knew the reason Ciraso wanted to talk to the inmate, or even that Blair's actions were necessarily improper. Standing alone, the affidavit is simply insufficient to reasonably infer a conspiracy between Blair and Ciraso to defame Darby.
A somewhat different analysis is appropriate in the examination of Darby's claims against Ciraso. Darby repeatedly argues that Ciraso's letters to the Sentinel were false, malicious, and libelous. As with the First Assignment of Error, much of this argument is irrelevant, because the trial court granted Ciraso summary judgment in his official capacity only. Having denied Ciraso summary judgment in his individual capacity, the court implicitly found that a genuine issue of material fact exists as to whether or not Ciraso's letters were defamatory. Thus, we need only consider whether Ciraso acted in his official capacity when he made any statements about Darby, and not whether those statements could be considered defamatory.
As Ciraso argued in his motion for summary judgment, Darby admitted at his deposition that the only evidence that Ciraso acted in his official capacity was two letters to the Sentinel, which identified Ciraso as the lead investigator for the CSEA. Both Ciraso and Austin Leedom, a member of the Sentinel staff, testified at their depositions that Ciraso signed the letters in his individual capacity, but that the Sentinel staff added the information identifying Ciraso's position with the CSEA. A review of the letters substantiates this claim, as the information identifying Ciraso's official position is contained within an editor's note below the letter, not as part of the signature line. We find that Ciraso identified evidence in the record demonstrating that Darby could not prove that Ciraso had taken any action in his official capacity. As a result, the burden shifted to Darby to set forth specific facts creating a genuine issue of material fact for trial. Dresher v. Burt, 75 Ohio St.3d at 293,662 N.E.2d at 274.
Darby further argues that Ciraso acted in his official capacity and defamed Darby in a letter to the United States Attorney's office in Cincinnati. In addition, Darby contends that Evelyn Rase testified at her deposition that Ciraso threatened her with prosecution if she did not accuse Darby of being involved in selling drugs. Finally, Darby submitted a document purporting to be an affidavit from Jeffrey Frost, in which Frost asserts that Ciraso offered to help reduce Frost's child support payments in exchange for information on Darby.
We find that none of the evidence relied on by Darby, whether considered individually or collectively, raises a genuine issue of fact for trial. The letter to the United States Attorney discusses actions Ciraso had taken individually and not on behalf of the CSEA. Our review of Rase's deposition fails to disclose any indication that Ciraso made any threats against her. Finally, the Frost "affidavit" is a handwritten note that, while notarized, contains no oath or affirmation to establish that Frost had been sworn. As a result, this document is not a valid affidavit, and we shall not consider it. Russell v. Creatif Catering,Inc. (Dec. 4, 1998), Montgomery App. No. 17031, unreported.
For the reasons stated above, Appellant's Second Assignment of Error is OVERRULED. The judgment of the Scioto County Court of Common Pleas is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kerns, J.*: Concurs in Judgment and Opinion.
Kline, P.J.: Concurs in Judgment Only.
 ______________________ David T. Evans, Judge
[1] Darby joined seven named defendants, including five individuals, the Shawnee Sentinel newspaper, the City of Portsmouth, as well as unknown John and Jane Does. We shall address only those allegations that are relevant to Darby's claims against Blair and Ciraso.
[2] Blair argues that his statements to Welton were couched in conditional language, so they were necessarily true and not defamatory. The Supreme Court of Ohio, however, has soundly rejected the notion that "opinion" statements are automatically exempted from being defamatory. Jacobs v.Franks, 60 Ohio St.3d at 120-121, 573 N.E.2d at 617. Similarly, we see no reason to adopt a per se exemption for conditional statements, or statements made in response to a third party's accusations. Thus, our findings on the actual malice issue should not be construed as being any broader than is warranted by the facts of the instant case.
* Joseph D. Kerns, retired, sitting by assignment of the Ohio Supreme Court in the Fourth District.